VALENTINE S. HOY (BAR NO. 121766)
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: vhoy@allenmatkins.com

BLANK ROME LLP
LINDA KORNFELD (BAR NO. 155765)
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Phone: (424) 239-3824
Fax: (424) 239-3434
E-mail: lkornfeld@blankrome.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SM 10000 PROPERTY, LLC, a Delaware limited liability company and SWINERTON BUILDERS, a California Corporation,

Plaintiffs,

vs.

ALLIANZ GLOBAL RISKS US INSURANCE COMPANY and DOES 1 through 10,

Defendants.

AND RELATED CROSS-ACTIONS.

Case No. 19-cv-03054-PJH (LB)

**JOINT LETTER BRIEF**

State Court Complaint Filed: May 1, 2019
Removal Date: June 3, 2019
Trial Date: February 1, 2021

July 23, 2020

Hon Laurel Beeler
U.S. Magistrate Judge
San Francisco Courthouse,
Courtroom B - 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

DISCOVERY MATTER

**Re:** ***SM 10000 Property, LLC, et al. v. Allianz Global Risks US Insurance Company***
**USDC, Northern District of California, Case No. 19-cv-03054-KAW (LB)**

Dear Judge Beeler:

Pursuant to Chief Judge Hamilton's Case Management Order (Dkt. No. 22) and this Court's December 27, 2019 Discovery Order (Dkt. No. 25), the parties to the above-referenced action submit this Joint Letter Brief concerning a dispute over the plaintiffs' rights to discovery of certain categories of documents in a request for production to the defendant and subpoenas to third-party consultants. The disputes are addressed in a single letter as they involve the same issues of relevancy and proportionality.

On September 19, 2019, Plaintiffs served their first Request for Production of Documents on Defendant, Allianz Global Risks Insurance Company ("Defendant"). Defendant served a written response on October 25, 2019, in which it interposed objections to all requests, agreed to produce certain documents notwithstanding the objections, and stated its intention not to produce others. On December 20, 2019, Plaintiffs and Defendant (collectively, the "Parties") filed a Joint Letter Brief (Dkt. No. 23) that identified disputes about Defendant's document production. On December 27, 2019, this Court ordered the Parties to continue to meet and confer to settle on a production schedule and stated that the unresolved dispute(s) regarding the scope of Defendant's document production were not yet ripe. The parties have met and conferred further but are unable to resolve their differences regarding certain of Plaintiffs' requests as discussed below.

Between 2015 and 2017, Defendant hired consulting companies to assist it to review Plaintiffs' insurance claims. These were J.S. Held, LLC ("Held"), Madison, Kneppers & Associates, Inc. ("MKA") and Matson, Driscoll & Damico, LLP ("MDD") (collectively, the "Allianz Consultants"). On or about November 15, 2019, Plaintiffs served a business records subpoena on each Allianz Consultant. Defendant's counsel, appearing as counsel for the Allianz Consultants, served timely written objections to each subpoena. Based on those objections, the Allianz Consultants withheld the production of certain categories of documents called for by the subpoenas. Disputes arose regarding the objections and refusals to produce documents similar to those with respect to Plaintiffs' Requests for Production.

Defendant and the Allianz Consultants represent that they have completed the production of all categories of documents they agreed to produce. Counsel have resolved as many of their disputes as they can without the assistance of the court. With non-expert depositions scheduled to commence in July 2020, the Parties seek resolution of the remaining issues in dispute so they may effectively prepare for upcoming witness depositions. A ruling by this Court is requested with respect to (i) Plaintiffs' Request for Production of Documents to Defendant, category nos. 12, 13, 14, 15, 20, 21, 22, 23, 28, 29, 30 and 31, and (ii) Plaintiffs' subpoenas to the Allianz Consultants, category nos. 6, 7 and 8.

## I. Plaintiffs' Position

### A. Summary of the Content of the Requests

All twelve of the document requests in dispute seek production of documents that would shed light on the terms and extent of Defendant's business relationships with three of the Allianz Consultants during the time when those consultants were investigating Plaintiffs' claims. *See* Exhibit 1. There are three batches, each containing four requests. Each batch of four requests is for documents relating to Defendant's other engagements of the same consultants it hired to investigate Plaintiffs' claims. The

four categories are: Request no. 12 for contracts; Request no. 13 for work evaluations and reviews; Request no. 14 for invoices and statements of account, and Request no. 15 for evidence of payments. The documents subpoenaed from the Allianz Consultants were similar. Category no. 6 of the subpoenas asked for copies of contracts, agreements, requests for service and purchase orders from Defendants dating one year before the Loss Event to present. *See* Exhibit 2. Category no. 7 requested invoices for this matter only. Category no. 8 requested invoices for any other work performed for Defendant during the same time frame. *Id.* Although it is believed that consultant billings were submitted electronically with task codes rather than detailed descriptions, any descriptions can easily be redacted.

**B. The Requests Are Relevant**

The categories of documents requested from Defendant and the Allianz Consultants must be considered in light of the elements of Plaintiffs' case, the burdens of proof, and the defenses. Plaintiffs sued for breach of the covenant of good faith and fair dealing. To establish a claim for bad faith it must be shown that the insurer's delay or withholding of benefits was objectively unreasonable. *Neal v. Farmers Insurance Exchange*, 21 Cal.3d 910, 920 (1978); *see also Morris v. Paul Revere Life Insurance Co.*, 109 Cal.App.4th 966, 973 (2003). The insured bears the burden of proving the insurer's delay or denial of benefits was unreasonable. *Jordan v. Allstate Insurance Co.*, 148 Cal.App.4th 1062, 1072 (2007). When the insured meets its burden of production, the burden of persuasion shifts to the insurer to negate the evidence of unreasonableness.

One way an insurer can refute the element of unreasonableness is by proving that it meets the strict standards of the so-called “genuine dispute doctrine”—that there exists a good faith and genuine dispute regarding coverage. *Wilson v. 21st Century Insurance Co.*, 42 Cal.4th 713, 723 (2007). The genuine dispute doctrine may apply where the insurer denies a claim in good faith reliance on the opinion of an expert. *Paslay v. State Farm General Insurance Company*, 248 Cal.App.4th 639, 653 (2016). However, “an expert’s testimony will not automatically insulate an insurer from a bad faith claim based on a biased investigation.” *Chateau Chamberay Homeowners Association v. Associated International Insurance Co.*, 90 Cal.App.4th 335, 348 (2001). Defendant purports to have relied upon “expert opinion,” here, when it cited in its denial letter Held’s “opinion” that the loss event described below was not a cause of the insured project’s delayed completion.

The loss event was an after-hours concrete form leak in the elevator shaft at the 27th floor of a 40-floor residential tower under construction in west Los Angeles. Wet concrete squeezed out of the wooden form, piling up on a temporary safety deck in the shaft. Eventually the weight of the concrete overwhelmed the safety deck, allowing wet concrete to cascade down the elevator shaft damaging everything in its path. Fortunately, no one was in the shaft at the time. The loss event was deemed by Defendant to be a covered accident under the terms of Plaintiffs' builder's risk policy, but coverage for the resulting construction delay was denied.

Defendant rested its denial on Held's "expert opinion" that all delay was caused by events unrelated to the loss event. At trial, Held's opinion, and possibly those of the other consultants, will undoubtedly be offered into evidence by Defendant as the primary, if not sole, basis for a claimed genuine dispute defense. Plaintiffs expect to prove Held's investigation was biased and negligent.

The terms and scope of the business relationship between Defendants and the consultants is relevant for any number of reasons, including bias. The potential bias of a witness is almost always relevant evidence. *United States v. Abel*, 469 U.S. 45, 52 (1984). Moreover, Plaintiffs contend the work product of the Allianz Consultants was deficient and that Defendant knew or should have known of the defects in their analysis. It is relevant to know whether Defendant's files contain formal or informal evaluations or reviews of the consultants’ work on this or other matters. The requested documents may reveal that Allianz had prior concerns about the quality of a consultant's work product, which is highly

relevant to the issue of bad faith. Denial of reasonably tailored document requests for such reviews and evaluations unfairly hamstrings the Plaintiffs' counsel and risks impairing the right of cross-examination.

**C. The Burden of Responding to the Requests is Proportional**

This situation is indistinguishable from other cases recognizing the right to discover information about insurance experts potentially relevant to show a biased investigation. *See Tucker v. AMCO Insurance Company*, 2018 WL 6044917, at *4 (E.D. Cal., Nov. 19, 2018) (denying insurance company's relevance and burden arguments and allowing discovery of the frequency of defendant's retention of the expert and amounts billed by the expert in other matters); *see also Hangarter v. Provident Life and Acc. Ins. Co.* 373 F.3d 998, 1011 (9th Cir. 2004) (evidence that expert rejected claims of total disability thirteen out of thirteen times, along with other evidence, constituted substantial evidence of bad faith investigation). It would be fundamentally unfair to deny Plaintiffs that kind of information here.

The dispute before this Court centers on the very narrow categories relating to retention terms and frequency, performance evaluations, and payment information. Correspondence, reports, and consultant work product was requested only for this claim, and has already been produced. Cases cited by Defendant for the proposition that information about an expert's other work for the insurer is not discoverable are easily distinguished. The discovery in this case is unlike the discovery that was denied in those cases. This is not an administrative record case with limited discovery rights, as was true of *Nguyen v. Sun Life Assurance Company of Canada* 2015 WL 6459689, at *8, (N.D. Cal., Oct. 27, 2015). Plaintiffs requests do not require the disclosure of information about other claims, and there is no need to obtain consent from other insureds, as was the case in *Mead Reinsurance Company v. Superior Court*, 188 Cal.App.3d 313, 321 (1986). Plaintiffs do not seek consultant reports about other claims, as was the case in *Ricotta v. Allstate Ins. Co.*, 211 F.R.D. 622 (S.D.Cal. 2002) and *Tilem v. Travelers Commercial Insurance Company* 2018 WL 4963124, at *3 (C.D. Cal., May 22, 2018). Indeed, the court's opinion in *Ricotta* acknowledged the relevance of plaintiff's discovery to show bias and merely chided plaintiff for going too far too fast. (211 F.R.D. at 624.) Plaintiffs' requests are tailored to obtaining exactly the kind of evidence of bias that has been approved in other cases and that the court in *Ricotta* suggested could be a predicate to asking for reports about other claims.

Defendant contends the burden of producing the requested documents is disproportionate to the benefit of the requests. Defendant has offered no reason as to why that would be so. The claim is for approximately $30 million of withheld policy benefits and the requested documents are highly relevant. The requests are limited in time and seek no information about other claims or insureds. Defendant has failed to explain why the burden of responding to the request is unreasonable. Given the size and great financial resources of the Defendant and the specificity of the requests there is no reason to presume collection of the contracts, reviews/evaluations and billing information would be unduly burdensome. Defendant's argument that this dispute is about burden is undercut by the fact that Defendant rejected Plaintiffs' offer to agree upon reasonable limitations to protect third party information and to reasonably limit the burden on the producing parties. It seems Defendant is not concerned so much with burden as it is with the contents of the requested documents.

**II. AGR US's position**

**A. Background**

Plaintiffs complain about: (1) AGR US's responses to the Plaintiffs' RFPs 12-15, 20-23, and 28-31 and (2) document requests to outside construction and accounting consultants retained by AGR US to help evaluate the extent of Plaintiffs' insurance claim (collectively "the Disputed Requests").

Surrounded by broad and vague language, the Disputed Requests seek financial information for *any* retention of the consultants by AGR US on *any matter other than the one at issue*, without regard to subject matter or geography. Plaintiffs also seek documents reflecting AGR US's comments on the

consultants' work *in other matters* (again without regard to geography or subject matter). The documents sought from AGR US span a 5-year period, and Plaintiffs' request to the consultants is for a 6-year period.

Compensation documents for the consultants have been produced in *the claim at issue in this case*.[1] The claim file for *the claim at issue in this case* has been produced, and that file would reflect any comment on the consultants' work.

The requests to AGR US seek documents referring or relating to (1) contracts, agreements, work requests, and purchase orders between "YOU" and the consultants; (2) any review, assessment, evaluation, approval, or criticism of the expertise, ability, qualifications, work product or job performance of the consultants or any of their employees; (3) all billings, invoices, and statements of account "YOU" received from the consultants; and (4) any and all payments "YOU" made to the consultants.[2] Plaintiffs seek similar financial information from the consultants, using a similar broad definition of "YOU."

### 1. Legal Standard

Rule 26 (b)(1) limits discovery to information relevant to any party's claim or defense, *provided it is proportional to the needs of the case*. Rule 26 requires "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) ("*Roberts*"). Lawyers must size and shape their discovery requests to the requisites of a case. *Id.* Rule 26 is intended to provide parties with access to what is needed to prove a claim or defense but eliminate unnecessary or wasteful discovery." *Id.* When the burden or expense of producing documents in discovery outweighs the likely benefits, the court has authority to limit the scope of the request. Fed. R. Civ. P. Rules 26(b)(2); 45(d). The Court should consider the totality of the circumstances. *Roberts*, 312 F.R.D. at 602.

### 2. The "Bad Faith" Claim Does Not Make The Disputed Requests Relevant

An insurer who bases its claim decision on reasonable expert opinions satisfies its obligation of good faith, though the insured presents opposing opinions. *Chateau Chamberay Homeowners Assoc. v. Assoc. International Ins. Co.*, 90 Cal.App.4th 335, 348 (2001); *501 East 51st Street, Long-Beach-10 LLC v. Kookmin Best Insurance Co., Ltd.* (2020) 47 Cal.App.5th 924, 937 ("*Koomkin*"). "A single, thorough report by an independent expert is sufficient, all other things being equal, to support application of the 'genuine dispute' doctrine." *Adams v. Allstate Ins. Co*,.187 F.Supp.2d 1219, 1227 (C.D. Cal. 2002). While reliance on an expert's advice does not automatically insulate an insurer from bad faith liability (*Koomkin* at p. 937), the question is whether it was reasonable to rely on the expert advice in the claim at hand, not on other matters. Thus, the Disputed Requests are not relevant to a claim or defense in this action.

### 3. The Disputed Requests Are Not Proportional to the Needs of the Case

Plaintiffs argues that their broad requests might go to credibility. However, the retention of outside claim consultants on multiple matters over a period of time is not by itself probative of credibility. *Nolan v. Heald College*, 745 F.Supp.2d 916, 923 (N.D.Cal.2010) see also, *Nguyen v. Sun Life Assurance Company of Canada* (N.D. Cal., Oct. 27, 2015) 2015 WL 6459689, at *8 (wherein this Court limited discovery regarding alleged bias of outside consultants in an ERISA insurance case).

---

[1] AGR US and the consultants expect to supplement their productions with additional invoices.

[2] The term "YOU" was defined to mean AGR US and any of its agents, representatives, employees, attorneys or other persons acting, or purporting to act, on behalf of Defendant.

An insurer's reliance on the advice of a consultant does not give a plaintiff *carte blanche* to delve into every corner of the relationship between the insurer and a retained consultant. *Ricotta v. Allstate Ins. Co.*, 211 F.R.D. 622 (S.D.Cal. 2002) ("*Ricotta"*); *Tilem v. Travelers Commercial Insurance Company* (C.D. Cal., May 22, 2018, 2018 WL 4963124, at *3. The key issue is whether the expert's advice was well grounded, and the insurer was reasonable in relying on the advice *in this particular case, not in other claims*. *Ricotta,* 211 F.R.D. at 624.

Any tangential relevancy as to the consultants' work *on other matters* is far outweighed by the undue burden and expense involved in attempting to collect and screen potentially responsive documents. AGR US has multiple lines of business and types of policies other than the specialized type of policy at issue here – a "Builders Risk" policy. Based on the broad wording of the Disputed Requests, claims under other types of policies may be responsive to Plaintiffs' requests, and thus would need to be reviewed to determine if the specific consultants were retained. All potentially responsive claims would then have to be screened by attorneys for actual responsiveness and for privilege and insurance privacy issues. See, Cal. Ins. Code § 791.13; *Mead Reinsurance Company v. Superior Court*, 188 Cal.App.3d 313, 321 (1986) (requiring court-approved letter to be sent to each individual insured to obtain consent to disclose claim information). AGR US conducted a preliminary search to evaluate how long it would take to search for potentially responsive documents for U.S. claims. Based on that search, it would take months for claim representatives to gather the files and have counsel screen the matters for privilege and confidentiality. The time would take away from the regular duties of Defendant's employees and would delay the advancement of this case while outside counsel reviews the files.[3]

The non-party consultants would have to conduct similar searches and document screening. For example, non-party MKA has more than twenty offices in the U.S. and Canada and it employs professionals other than those who estimate construction repair costs. (See https://www.mkainc.com/) Plaintiffs' requests to MKA would require it to coordinate a search at each of its location, which would take months, and would take MKA employees away from their regular duties. MKA has an obligation of confidentiality for every file it works on. The requested documents contain confidential and proprietary information of insureds and getting all their releases would be next to impossible and of course time consuming.

Similarly, Held – one of the construction consultants - is a global multi-disciplinary firm. (See https://jsheld.com/) A preliminary search of Held's ESI for Allianz yielded approximately 1.62 *terabytes* of unindexed files, each of which would have to be screened by counsel for responsiveness, privilege, confidentiality, proprietary information and insurance privacy issues.

MDD is a forensic accounting firm with offices worldwide. (See https://www.mdd.com/) MDD handles a variety of matters that have no relation to the claim at issue here. As with the other consultants, the search for potentially responsive documents would be arduous and would also involve confidentiality and privilege issues.

In short, the Disputed Requests cast too wide a net and would require undue burden and expense in pursuit of a collateral issue. Potentially responsive documents ultimately could end up in a "mini-trial" as to whether the consultants' opinions on each claim were accurate and they were compensated fairly and appropriately. The tangential information Plaintiffs seek from the documents simply does not meet the proportionality test. AGR US and the consultants should not be required to further respond to the Disputed Requests.

Sincerely,

/s/ Valentine S. Hoy

Sincerely,

/s/ Dianne J. Meconis

[3] See Declaration of Dianne J. Meconis accompanying this joint letter brief.

## APPENDIX OF EXHIBITS


| Exhibit | Description | Page Nos. |
|---|---|---|
| Exhibit 1 | Excerpts From Defendant Allianz Global Risks US Insurance Company's Responses to Plaintiff's Requests for Production of Documents, Set One | 8-16 |
| Exhibit 2 | Excerpts from Third Party JS Held's and Defendant Allianz Global Risks US Insurance Company's Joint Objections to Deposition Subpoena for Business Records to JS Held | 17-19 |
| Exhibit 3 | Declaration of Dianne J. Meconis re: Joint Letter Brief Regarding Discovery as to Other Matters in Which Defendant's Consultants Were Engaged | 20-25 |