# EXHIBIT A

TO BUMGARDNER DECLARATION
IN SUPPORT OF PLAINTIFFS' *DAUBERT* MOTION



AACE® International Recommended Practice No. 29R-03

# FORENSIC SCHEDULE ANALYSIS
TCM Framework: 6.4 – Forensic Performance Assessment

Acknowledgments: (April 25, 2011 Revision)
Kenji P. Hoshino, CFCC PSP (Author)
John C. Livengood, CFCC PSP (Author)
Christopher W. Carson, PSP (Author)
Andrew Avalon, PE PSP
Michael S. Dennis, CCC
Rob Hartley, PSP
Richard J. Long, PE
J. Scott Lowe, PE
Robert B. McCullough, PE CCE CFCC
Donald F. McDonald, Jr., PE CCE PSP
Mark F. Nagata, PSP
Jeffery L. Ottesen, PE CFCC PSP
Thomas F. Peters, PE CFCC
Dr. Fredric L. Plotnick, PE
Dr. Anamaria I. Popescu, PE PSP
Mark C. Sanders, PE CCE PSP
L. Lee Schumacher, PE PSP
Michael D. Tarullo
Jeffrey M. Wentz
Ronald M. Winter, PSP
J. Kimon Yiasemides, PSP
James G. Zack, Jr., CFCC

Acknowledgments: (June 23, 2009 Revision)
Kenji P. Hoshino, CFCC PSP (Author)
Andrew Avalon, PE PSP
Christopher W. Carson, PSP
Michael S. Dennis, CCC
Sidney J. Hymes, CFCC
John C. Livengood, CFCC PSP
Richard J. Long
Mark F. Nagata, PSP

Jeffery L. Ottesen, PE CFCC PSP
Thomas F. Peters, PE CFCC
Dr. Anamaria I. Popescu, PE
Jose F. Ramirez, CCE
Mark C. Sanders, PE CCE PSP
L. Lee Schumacher, PSP
Stephen P. Warhoe, PE CCE CFCC
Ronald M. Winter, PSP
James G. Zack, Jr. CFCC

Acknowledgments: (June 25, 2007 Revision)
Kenji P. Hoshino, CFCC PSP (Author)
Robert B. Brown, PE
John J. Ciccarelli, PE CCE PSP
Gordon R. Costa, CFCC PSP
Michael S. Dennis, CCC
Edward E. Douglas, III CCC PSP
Philip J. Farrocco, PE
Sidney J. Hymes, CFCC
John C. Livengood, CFCC PSP
Mark F. Nagata, PSP
Jeffery L. Ottesen, PE CFCC PSP
Thomas F. Peters, PE CFCC
Keith Pickavance
Dr. Anamaria I. Popescu, PE
Jose F. Ramirez, CCE
Mark C. Sanders, PE CCE PSP
Takuzo Sato
L. Lee Schumacher, PSP
Robert Seals, PSP
Ronald M. Winter, PSP
James G. Zack, Jr. CFCC



Copyright 2011 AACE® International, Inc.                    AACE® International Recommended Practices



base implementation of the additive method, whereas one where delays are extracted from several as-built simulations is a multi-base simulation implementation of the subtractive method.

A single base additive modeling method is typically called the impacted as-planned. Similarly the single simulation subtractive method is called the collapsed as-built. The multi-base, additive simulation variation is often called a window analysis.

The nine method implementation protocols (MIP) in Section 3 represent the instances of basic protocols based on the distinctions outlined in Layer 4.

### E. Layer 5: Specific Implementation

#### 1. Fixed Periods vs. Variable Periods / Grouped Periods

These specific implementations are the two possible choices for segmentation under all basic implementations except gross mode and the single base / simulation basic implementations. They are not available under the gross mode because the absence of segmentation is the distinguishing feature of the basic gross mode. They are not available under the single base / simulation basic implementation because segmentation assumes a change in network logic for each segment; the single base simulation uses only one set of network logic for the model.

In the fixed period specific implementation, the periods are fixed in date and duration by the data dates used for the contemporaneous schedule updates, usually in regular periods such as monthly. Each update period is analyzed. The act of grouping the segments for summarization after each segment is analyzed is called blocking.

The variable period/grouped period specific implementation establishes analysis periods other than the update periods established during the project by the submission of regular schedule updates. The grouped period implementation groups together the pre-established update periods while the variable period implementation establishes new periods whose lines of demarcation may not coincide with the data dates used in the pre-established periods and/or which can be determined by changes in the critical path or by the issuance of revised or recovery baseline schedules. This implementation is one of the primary distinguishing features of the variable period analysis method.

#### 2. Global (Insertion or Extraction) vs. Stepped (Insertion or Extraction)

This specific implementation pair occurs under the single base, simulation basic implementation, which in turn occurs under the additive modeling and the subtractive modeling specific methods. Under the global implementation delays are either inserted or extracted all at once, while under the stepped implementation, the insertion or the extraction is performed sequentially (individually or grouped).

Although there are further variations in the sequence of stepping the insertions or extractions, usually the insertion sequence is from the start of the project towards the end, whereas stepped extraction starts at the end and proceeds towards the start of the project.

### 1.5. Underlying Fundamentals and General Principles

#### A. Underlying Fundamentals

At any given point in time on projects, certain work must be completed at that point in time so the completion of the project does not slip later in time. The industry calls this work, "critical work." Project

Copyright 2011 AACE® International, Inc.                         AACE® International Recommended Practices



circumstances that delay critical work will extend the project duration. Critical delays are discrete, happen chronologically, and accumulate to the overall project delay at project completion.

When the project is scheduled using CPM scheduling, the schedule typically identifies the critical work as the work that is on the "longest" or "critical path" of the schedule's network of work activities. The performance of non-critical work can be delayed for a certain amount of time without affecting the timing of project completion. The amount of time that the non-critical work can be delayed is "float" or "slack" time referring to as Total Float.

A CPM schedule for a particular project generally represents only one of the possible ways to construct the project. Therefore, in practice, the schedule analyst must also consider the assumptions (work durations, logic, sequencing, and labor availability) that form the basis of the schedule when performing a forensic schedule analysis. This is particularly true when the schedule contains preferential logic (i.e., sequencing which is not based on physical or safety considerations) and resource assumptions. This is because both can have a significant impact on the schedule's calculation of the critical path and float values of non-critical work at a given point in time.

CPM scheduling facilitates the identification of work as either critical or non-critical. Thus, at least in theory, CPM schedules give the schedule analyst the ability to determine if a project circumstance delays the project or if it just consumes float in the schedule assuming that float is not specifically owned by either party under that terms of the contract. For this reason, delay evaluations utilizing CPM scheduling techniques are preferred for the identification and quantification of project delays.

The critical path and float values of uncompleted work activities in CPM schedules change over time as a function of the progress (or lack of progress) on the critical and non-critical work paths in the schedule network. Only project circumstances that delay work that is critical when the circumstances occur extend the overall project. Thus, when quantifying actual project delay, the accuracy in quantification is increased when the impacts of potential causes of delay are evaluated within the context of the schedule in effect at the time when the impacts happen.

**B. General Principles**

**1. Use CPM Calculations**

Calculation of the critical path and float must be based on a CPM schedule with proper logic (see Subsection 2.1.)

**2. Concept of Data Date Must be Used**

The CPM schedule used for the calculation must employ the concept of the data date or status date. Note that the critical path and float can be computed by commonly available commercial CPM software only for the portion of the schedule forward (future) of the data date.

**3. Shared Ownership of Network Float**

In the absence of contrary contractual language, network float, as opposed to project float, is a shared commodity between the owner and the contractor. In such a case float must be shared in the interest of the project rather than to the sole benefit of one of the parties to the contract.

**4. Update Float Preferred Over Baseline Float**

If validated, contemporaneous updates exist, relative float values for activities in those updates at the time the schedule activity was being performed are considered more reliable compared to relative float values in the baseline for those same activities.

Copyright 2011 AACE® International, Inc.                    AACE® International Recommended Practices



### 5. Sub-Network Float Values

What is critical in a network model may not be critical when a part of that network is evaluated on its own, and vice versa. The practical implication of this rule is that what is considered critical to a subcontractor in performing its own scope of work may not be critical in the master project network. Similarly, a schedule activity on the critical path of the general contractor's master schedule may carry float on a subcontractor's sub-network when considered on its own.

### 6. Delay Must Affect the Critical Path

In order for a claimant to be entitled to an extension of contract time for a delay event (and further to be considered compensable), the delay must affect the critical path. This is because before a party is entitled to time-related compensation for damages it must show that it was actually damaged. Because conventionally a contractor's delay damages are a function of the overall duration of the project, there must be an increase in the duration of the project.

### 7. All Available Schedules Must Be Considered

Regardless of the method selected for analysis, all available sources of planning and schedule data created during the project, including but not limited to, various versions of baselines, updates and as-builts, should be examined and considered, even if they are not directly used for the analysis.

## 2. SOURCE VALIDATION

The intent of the source validation protocols (SVP) is to provide guidance in the ***process*** of assuring the validity of the source input data that forms the foundation of the various forensic schedule analysis methodologies discussed in Section 3. Any analysis method, no matter how reliable and meticulously implemented, can fail if the input data is flawed. The primary purpose of the SVP is to minimize the failure of an analysis method based upon the flawed use of source data.

The approach of the SVP is to maximize the ***reliable use*** of the source data as opposed to assuring the underlying reliability or accuracy of the substantive content of the source data. The best accuracy that an analyst can hope to achieve is in the faithful reflection of the facts as represented in contemporaneous project documents, data, and witness statements. Whether that reflection is an accurate model of reality is almost always a matter of debatable opinion.

Source validation protocols consist of the following:

   2.1. Baseline Schedule Selection, Validation, and Rectification (SVP 2.1)
   2.2. As-Built Schedule Sources, Reconstruction, and Validation (SVP 2.2)
   2.3. Schedule Updates: Validation, Rectification, and Reconstruction (SVP 2.3)
   2.4. Identification and Quantification of Discrete Impact Events and Issues (SVP 2.4)

### 2.1. Baseline Schedule Selection, Validation, and Rectification (SVP 2.1)

#### A. General Considerations

The baseline schedule is the starting point of most types of forensic schedule analyses. Even methods that do not directly use the baseline schedule, such as the modeled subtractive method, often refer to the baseline for activity durations and initial schedule logic. Hence, assuring the validity



April 25, 2011

Not all of the above factors will be applicable to all delay claims, obviously. Nevertheless, a prudent forensic schedule analyst should consider each of the above factors, as well as any other relevant factors that emerge, to determine which apply to the claim at hand. Once these are identified, including their potential synergistic effect upon each other, the forensic schedule analyst should discuss each applicable factor with the client and their legal counsel prior to making a recommendation as to which method should be employed for the delay analysis. Failure to consider these factors could lead to substantial difficulties later on in claim settlement negotiations, arbitration, or litigation.

## REFERENCES

1. *SCL Delay and Disruption Protocol*, Society of Construction Law, Oxon, United Kingdom, 2002
2. Primavera Project Planner – on-line software glossary
3. Microsoft Project – on-line software glossary
4. *AACE International Recommended Practice No 10S-90 "Cost Engineering Terminology"*, AACE International, Morgantown, WV, 2004
5. *Construction Delay Claims*, Third Edition, Barry B. Bramble, Esq., Michael T. Callahan, Esq., Aspen Publishers, New York, NY, 2006
6. *Construction Scheduling: Preparation, Liability & Claims, Third Edition, Jon M. Wickwire, Esq., Thomas J. Driscoll, Stephen B. Hurlbut, Esq., Mark J. Groff, Esq., Aspen Publishers, New York, NY, 2010*
7. *How to Get Paid for Construction Changes: Preparation and Resolution Tools and Techniques*, Steven S. Pinnell, McGraw-Hill, New York, NY, 1998
8. *Proposed Specification Language Regarding Pacing*, Kenji P. Hoshino, AACE International Annual Meeting, 2006
9. *The American Heritage® Dictionary of the English Language, Fourth Edition*, Houghton Mifflin Company, Boston, MA, 2006

## CONTRIBUTORS

(April 25, 2011 Revision)

Kenji P. Hoshino, CFCC PSP (Author)
John C. Livengood, CFCC PSP (Author)
Christopher W. Carson, PSP (Author)
Andrew Avalon, PE PSP
Michael S. Dennis, CCC
Rob Hartley, PSP
Richard J. Long, PE
J. Scott Lowe, PE
Robert B. McCullough, PE CCE CFCC
Donald F. McDonald, Jr., PE CCE PSP
Mark F. Nagata, PSP
Jeffery L. Ottesen, PE CFCC PSP
Thomas F. Peters, PE CFCC
Dr. Fredric L. Plotnick, PE
Dr. Anamaria I. Popescu, PE PSP
Mark C. Sanders, PE CCE PSP
L. Lee Schumacher, PE PSP
Michael D. Tarullo
Jeffrey M. Wentz
Ronald M. Winter, PSP
J. Kimon Yiasemides, PSP

Copyright 2011 AACE® International, Inc.                AACE® International Recommended Practices

April 25, 2011

James G. Zack, Jr., CFCC

(June 23, 2009 Revision)

Kenji P. Hoshino, CFCC PSP (Author)
Andrew Avalon, PE PSP
Christopher W. Carson, PSP
Michael S. Dennis, CCC
Sidney J. Hymes, CFCC
John C. Livengood, CFCC PSP
Richard J. Long
Mark F. Nagata, PSP
Jeffery L. Ottesen, PE CFCC PSP
Thomas F. Peters, PE CFCC
Dr. Anamaria I. Popescu, PE
Jose F. Ramirez, CCE
Mark C. Sanders, PE CCE PSP
L. Lee Schumacher, PSP
Stephen P. Warhoe, PE CCE CFCC
Ronald M. Winter, PSP
James G. Zack, Jr. CFCC


(June 25, 2007 Revision)

Kenji P. Hoshino, CFCC PSP (Author)
Robert B. Brown, PE
John J. Ciccarelli, PE CCE PSP
Gordon R. Costa. CFCC PSP
Michael S. Dennis, CCC
Edward E. Douglas, III CCC PSP
Philip J. Farrocco, PE
Dr. Sidney J. Hymes, CFCC
John C. Livengood, CFCC PSP
Mark F. Nagata, PSP
Jeffery L. Ottesen, PE CFCC PSP
Thomas F. Peters, PE CFCC
Keith Pickavance
Dr. Anamaria I. Popescu, PE
Jose F. Ramirez, CCE
Mark C. Sanders, PE CCE PSP
Takuzo Sato
L. Lee Schumacher, PSP
Robert Seals, PSP
Ronald M. Winter, PSP
James G. Zack, Jr. CFCC