# EXHIBIT B

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
VALENTINE S. HOY (BAR NO. 121766)
TIMOTHY M. HUTTER (BAR NO. 267949)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone:  (619) 233-1155
Fax:  (619) 233-1158
E-Mail:  vhoy@allenmatkins.com
          thutter@allenmatkins.com

BLANK ROME LLP
LINDA KORNFELD (BAR NO. 155765)
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Phone: (424) 239-3824
Fax:  (424) 239-3434
E-mail: lkornfeld@blankrome.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SM 10000 PROPERTY, LLC, a Delaware limited liability company and SWINERTON BUILDERS, a California Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLIANZ GLOBAL RISKS US INSURANCE COMPANY and DOES 1 through 10, <br><br> Defendant. | Case No. 19-cv-03054-PJH <br><br> **SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)** |

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure ("FRCP") and this Court's scheduling order, Plaintiffs SM 10000 Property, LLC and Swinerton Builders ("Plaintiffs") hereby disclose and designate the expert witnesses who may be called upon to present evidence at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence:

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

903582.06/SD

SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT
DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

1.    Edward J. McKinnon
      Claims Resource Management, Inc.
      33345 Santiago Road
      Acton, CA 93510

Plaintiffs may elicit expert testimony from Mr. McKinnon regarding the structure of insurance companies in general, builders risk insurance policies, including delayed start up coverage, the relationship between claims handling and policy underwriting, and the presentation and handling of insurance claims by claims adjusters and managers.  Mr. McKinnon is expected to testify about the common practices of insurance claims adjusters and managers, the standard of care applicable to claims handling, the insurance policy issued to Plaintiffs by defendant Allianz Global Risk US Insurance Co. ("Allianz"), and the review and handling of Plaintiffs' insurance claims by Allianz the in this case.

Pursuant to FRCP 26(a)(2)(B), Mr. McKinnon's expert report is attached hereto as **Exhibit 1** and includes a copy of his curriculum vitae.  The report summarizes Mr. McKinnon's work, the documents he reviewed and his primary opinions related to this matter.  Mr. McKinnon will testify and is prepared to testify at deposition based upon the information and documents produced in this case.  Mr. McKinnon's hourly fee for document review, preparation, deposition and trial testimony is $350.00.

2.    Theodore Bumgardner
      Xpera Group
      10911 Technology Place
      San Diego, CA 92127

Plaintiffs may elicit expert testimony from Mr. Bumgardner regarding high-rise construction methods, management and sequencing of work, schedule analysis, professional standards and practices in the field of forensic schedule analysis.  Mr. Bumgardner is expected to testify about the construction of the Ten Thousand project, the loss event, the impact of the loss event on the schedule for completion of the project, the Period of Delay as defined in the owner's builders risk insurance policy, the losses, costs and expenses incurred by Swinerton as a result of the loss event, and the J.S. Held & Co.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

-2-
SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT
903582.06/SD    DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

reports relied upon by Allianz to evaluate Plaintiffs' insurance claims arising from the loss event.

Pursuant to FRCP 26(a)(2)(B), Mr. Bumgardner's expert report is attached hereto as **Exhibit 2** and includes two parts: Elevator Shaft Loss Event Delay Analysis and Report on Damages, as well as a copy of his curriculum vitae and a list of trial and deposition testimony Mr. Bumgardner has provided in the past four years.  The report, in three parts, summarizes Mr. Bumgardner's work, the documents he reviewed and his opinions related to this matter.  Mr. Bumgardner's hourly fee for document review, preparation, deposition and trial testimony is $320.

3.    Brian Bergmark
      Torrey Partners
      3390 Carmel Mountain Road, Suite 150
      San Diego, CA 92121

Plaintiffs may elicit expert testimony from Mr. Bergmark regarding damages caused to Plaintiffs, respectively, by the loss event and the resulting delay, including all loss of revenue, costs and expenses, the amounts submitted as part of their respective insurance claims, the categories of loss described in the policy, the application of policy sub-limits and deductibles, the policy benefits owed to Plaintiffs as a result of the loss event, legal fees and the calculation of interest on damages to which Plaintiffs claim entitlement in this case.  Mr. Bergmark is expected to testify about the presentation of the insurance claim by SM 10000 Property, LLC, and the financial impacts of the loss event on SM 10000 Property, LLC and Swinerton Builders (as determined by Mr. Bumgardner and Xpera).

Mr. Bergmark's report is attached herein as **Exhibit 3** and includes Mr. Bergmark's curriculum vitae as well as a list of trial and deposition testimony Mr. Bergmark has provided in the past four years.  The report summarizes Mr. Bergmark's work, the documents he reviewed and his primary opinions related to this matter.  Mr. Bergmark's hourly fee for document review, preparation, deposition and trial testimony is $425.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

903582.06/SD

-3-
SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT
DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

1          4.      Plaintiffs reserve the right to elicit opinion testimony from any or all

2    of the following percipient witnesses at trial, who are identified as unretained experts about

3    the subjects described below:

4          **Ray Haj** -- Mr. Haj is a Swinerton employee who is a percipient witness in this

5    case and who has expertise in management of high rise construction projects.  Mr. Haj has

6    had his deposition taken in this case. Plaintiffs may elicit expert testimony from Mr. Haj

7    about the construction of the Ten Thousand project on the following topics: scheduling of

8    the Swinerton's work, the execution of Swinerton's work, schedule delays experienced on

9    the Ten Thousand project and the reasons for them, the pre-loss event sequencing of

10   Swinerton's work, resequencing of Swinerton's work after the loss event, expediting of

11   Swinerton's work, the dates when the project milestones were actually achieved, whether

12   Swinerton would have completed the Ten Thousand project earlier but for the loss event,

13   when milestones would have been met but for the loss event, the early completion bonus

14   Swinerton would have received but for the loss event, the J.S. Held & Co. reports and the

15   analysis contained in them, delay analysis methodologies used in the construction industry,

16   and the costs and extra expenses incurred by Swinerton due to the loss event.

17         **Keith Dancey** -- Mr. Dancey is a Swinerton employee who is a percipient witness

18   in this case and who has expertise in management of high rise construction projects.  Mr.

19   Dancey has had his deposition taken in this case. Plaintiffs may elicit expert testimony

20   from Mr. Dancey about the construction of the Ten Thousand project on the following

21   topics: scheduling of the Swinerton's work, the execution of Swinerton's work, schedule

22   delays experienced on the Ten Thousand project and the reasons for them, the pre-loss

23   event sequencing of Swinerton's work, resequencing of Swinerton's work after the loss

24   event, expediting of Swinerton's work, the dates when the project milestones were actually

25   achieved, whether Swinerton would have completed the Ten Thousand project earlier but

26   for the loss event, when milestones would have been met but for the loss event, the early

27   completion bonus Swinerton would have received but for the loss event, the J.S. Held &

28   Co. reports and the analysis contained in them, delay analysis methodologies used in the

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

903582.06/SD

-4-
SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT
DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

1  construction industry, and the costs and extra expenses incurred by Swinerton due to the

2  loss event.

3      **Peter Ruiz** -- Mr. Ruiz is a Swinerton employee who is a percipient witness in this

4  case and who has expertise in superintending work on high rise construction projects. Mr.

5  Ruiz has had his deposition taken in this case. Plaintiffs may elicit expert testimony from

6  Mr. Ruiz about the construction of the Ten Thousand project on the following topics:

7  scheduling of the Swinerton's work, the execution of Swinerton's work, the scheduling

8  and execution of work by Swinerton subcontractors on the Ten Thousand project, schedule

9  delays experienced on the Ten Thousand project and the reasons for them, the pre-loss

10  event sequencing of Swinerton's work, resequencing of Swinerton's work after the loss

11  event, expediting of Swinerton's work, the dates when the project milestones were actually

12  achieved, whether Swinerton would have completed the Ten Thousand project earlier but

13  for the loss event, when milestones would have been met but for the loss event, the early

14  completion bonus Swinerton would have received but for the loss event, the J.S. Held &

15  Co. reports and the analysis contained in them, delay analysis methodologies used in the

16  construction industry, and the costs and extra expenses incurred by Swinerton due to the

17  loss event.

18      **Ralph Testa** -- Mr. Testa is a Schindler Elevator Co. employee who is a percipient

19  witness in this case and who has expertise in the installation of elevators in high rise

20  construction projects. Plaintiffs may elicit expert testimony from Mr. Testa about the

21  construction of the Ten Thousand project on the following topics: scheduling of the

22  Schindler's work, the execution of Schindler's work, schedule delays experienced on the

23  Ten Thousand project and the reasons for them, the pre-loss event sequencing of

24  Schindler's work, resequencing of Schindler's work after the loss event, expediting of

25  Schindler's work, the impacts of the loss event on the completion of Schindler's work, the

26  work of other trades adjacent to and above Schindler's work, and the vertical

27  transportation capabilities of Schindler elevators..

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

903582.06/SD

-5-
SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT
DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

**Dennis Davis** -- Mr. Davis is a Schindler Elevator Co. employee who is a percipient witness in this case and who has expertise in the installation of elevators in high rise construction projects.  Mr. Davis may offer opinion testimony about the construction of the Ten Thousand project on the following topics: scheduling of the Schindler's work, the execution of Schindler's work, schedule delays experienced on the Ten Thousand project and the reasons for them, the pre-loss event sequencing of Schindler's work, resequencing of Schindler's work after the loss event, expediting of Schindler's work, the impacts of the loss event on the completion of Schindler's work, the work of other trades adjacent to and above Schindler's work, and the vertical transportation capabilities of Schindler elevators.

**Chris Palermo** -- Mr. Palermo is a Crescent Heights employee who is a percipient witness in this case and who has expertise in management of high rise construction projects.  Mr. Palermo has had his deposition taken in this case. Plaintiffs may elicit expert testimony from Mr.  Palermo about the construction of the Ten Thousand project on the following topics: scheduling of the Swinerton's work, the execution of Swinerton's work, the scheduling and execution of work by Swinerton subcontractors on the Ten Thousand project, schedule delays experienced on the Ten Thousand project and the reasons for them, the pre-loss event sequencing of Swinerton's work, resequencing of Swinerton's work after the loss event, expediting of Swinerton's work, the dates when the project milestones were actually achieved, whether Swinerton would have completed the Ten Thousand project earlier but for the loss event, when milestones would have been met but for the loss event, the early completion bonus Swinerton would have received but for the loss event, the J.S. Held & Co. reports and the analysis contained in them, delay analysis methodologies used in the construction industry, and the costs and extra expenses incurred by Swinerton due to the loss event.

**Jonathan Meir** – Mr. Meir is a percipient witness in this case who has expertise in management of high rise construction projects.  Mr. Meir has had his deposition taken in this case. Plaintiffs may elicit expert testimony from Mr. Meir about the construction of the Ten Thousand project on the following topics: scheduling of the Swinerton's work, the

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

903582.06/SD

-6-
SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT
DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

1   execution of Swinerton's work, the scheduling and execution of work by Swinerton

2   subcontractors on the Ten Thousand project, schedule delays experienced on the Ten

3   Thousand project and the reasons for them, the pre-loss event sequencing of Swinerton's

4   work, resequencing of Swinerton's work after the loss event, expediting of Swinerton's

5   work, the dates when the project milestones were actually achieved, whether Swinerton

6   would have completed the Ten Thousand project earlier but for the loss event, when

7   milestones would have been met but for the loss event, the early completion bonus

8   Swinerton would have received but for the loss event, the J.S. Held & Co. reports and the

9   analysis contained in them, delay analysis methodologies used in the construction industry,

10  and the costs and extra expenses incurred by Swinerton due to the loss event.

11        **Roman Speron** -- Mr. Speron is a percipient witness in this case who has expertise

12  in the design, development, marketing, sale, leasing and turnover of high rise construction

13  projects.  Plaintiffs may elicit expert testimony from Mr. Speron about the design,

14  development, marketing and leasing of luxury high rise residential projects in major cities

15  generally and the Ten Thousand project in particular, including the following topics:

16  planning for the initial occupancy of Ten Thousand or any similar project, the cost, timing,

17  and purpose of the owner's engagement of designers, consultants and marketing

18  professionals for Ten Thousand or any similar project, the owner's changes to the

19  construction of Ten Thousand, the owner's marketing and leasing of Ten Thousand,

20  leasing of apartment units at Ten Thousand or any similar project, the reasonableness of

21  the owner's pro forma financial models for lease up of Ten Thousand, the absorption or

22  uptake of Ten Thousand apartment units, the requirements for completion and turning over

23  the units at Ten Thousand or any similar project, the accuracy and reasonableness of the

24  owner's claim for extra costs and expenses and loss of revenues caused by the loss event.

25        5.       Plaintiffs reserve the right to amend or supplement this response if and when

26  additional information is discovered, including upon receipt of Defendant's disclosures,

27  pursuant to FRCP 26(a)(2), and to identify additional experts pursuant to FRCP

28  26(a)(2)(D)(ii).  Plaintiff also reserves the right to call on the identified experts to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

-7-
SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT
903582.06/SD    DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

1  supplement the reports based on additional information including, without limitation, the

2  testimony of witnesses not yet deposed and information not yet received or produced.

3  Plaintiffs further reserve the right to call as an expert witness or solicit expert testimony

4  from any expert witness named or designated by Defendant to testify in this matter.

5          Plaintiffs also reserve the right to retain and call any other expert witness, the need

6  for which may arise after the deposition testimony of any experts involved herein has been

7  obtained, should that become necessary.  Plaintiffs further reserve the right to withdraw or

8  not call any person designated herein as an expert witness.

9

10  Dated:  October 26, 2020                    ALLEN MATKINS LECK GAMBLE
                                                MALLORY & NATSIS LLP
11

12                                              By:  _____ */s/ Valentine S. Hoy*_____
13                                                   VALENTINE S. HOY
                                                     Attorneys for Plaintiffs
14

15  Dated:  October 26, 2020                    BLANK ROME LLP

16

17                                              By:  _____ */s/ Linda Kornfeld*_____
18                                                   LINDA D. KORNFELD
                                                     Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

903582.06/SD

-8-
SM 10000 PROPERTY, LLC and SWINERTON BUILDERS' EXPERT
DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

EXHIBIT 1

# claims resource management, inc.

California License No. 2B35861
Nevada License No. 10860

P.O. Box 250

33345 Santiago Rd.
Acton, California 93510
Telephone: (661) 265-6400
Fax: (661) 265-6450
www.crmi.com
Edward J. McKinnon
President
Direct Line: (661) 265-6401
E-mail: ed@crmi.com

October 26, 2020

To Whom It May Concern:

Re:        SM 10000 / Swinerton adv. Allianz Global Risks
Our File:        48499

Ladies and Gentlemen:

I have been asked to prepare a report regarding the captioned matter pursuant to Federal Rule of
Civil Procedure 26(a)2(B).  That report follows:

I was furnished, reviewed and relied upon the documents liste in Exhibit A, attached.

My report follows:

**The Occurrence**

SM 10000 Property, LLC ("SM 10000") was the developer of a 40 story, 283 unit, luxury
apartment building located at 10000 Santa Monica Place in Los Angeles (the "Project").  On
December 2, 2015, at about 4:30 PM, a concrete form on the 37th floor, holding freshly poured
concrete, failed and approximately 2 cubic yards of wet concrete fell into the Building's elevator
shaft that was still under construction.  The falling concrete demolished all crash decks to the
ground level, as well as safety rails, elevator clips and netting at all floors.  Concrete splatter was
deposited on all floors.  An elevator "false car", hoisting equipment and elevator guide rails and
brackets, were damaged or destroyed.  Concrete debris ended up in the elevator pit.

On December 21, 2015, Aon, the insurance broker that placed the applicable policy, reported the
incident to Allianz on behalf of SM 10000.  Swinerton Builders, the involved general contractor,
also reported the incident at that time.  The claims were assigned to Allianz Executive General
Adjuster, Lourdes Reyes, who acknowledged receipt to SM 10000's representative and Keith
Dancey of Swinerton.  Reyes retained a forensic engineering firm, Madsen, Kneppers &
Associates, and requested an opportunity to inspect the site on December 23rd.  In March of
2017, Reyes retained JS Held to assist in responding to SM 10000's DSU claim.

# claims resource management of nevada, inc.

Final-P:\wpoct\48499 EJM1023r.wpd

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 2

**The Policy**

Effective October 1, 2013, Allianz Global Risks US Insurance Company ("Allianz") issued a Contractors Installation/Builders Risk Insurance Policy (the "Policy") to SM 10000.  The Policy was issued to provide certain coverages for the construction of the Project.  The Policy included a number of additional insureds, including Swinerton.  The Policy was effective October 1, 2013, originally expiring January 1, 2016, but later endorsed to expire December 31, 2016.

The Policy provided coverage to SM 10000, as the Project owner, and additional insureds for physical loss or damage occurring to the building while it was in the course of construction.  The Policy's limit was $194,718.45, subject to a number of sub-limits applicable to listed categories of loss and loss related expenses, which was increased by endorsement to $198,081,341 shortly before construction started.

The Policy's insuring agreement provided in pertinent part:

> "This Policy ... insures against all risks of direct physical loss of or direct physical damage to Insured Property ..."

In addition to coverage for damage to the project and material to be installed in the project, the Policy provides coverage for expenses incurred to reduce project delays caused by covered physical damage and its repair.  One of the delay related coverages provided in the Policy is Contractor's Extra Expense which covers expenses incurred to maintain work schedules on undamaged portions of the project.  The Policy provides:

> "This Policy is extended to cover reasonable and necessary Extra Expense which is incurred by the Insured for the purpose of continuing as nearly as practicable the scheduled progress of undamaged work but only when such scheduled progress is impaired by direct physical loss or damage insured to the Insured Property ...
>
> In the event that the amount of physical loss or damage to Property Insured as a result of a covered cause of loss under this Policy is less than the applicable deductible stated elsewhere in this Policy, the Company shall not accept a claim for nor be liable for excess costs as covered herein.
>
> 1.    Extra Expense shall be defined as the excess costs over and above the total costs that would normally have been incurred to continue the scheduled progress of the undamaged work in the absence of insured loss or damage.
>
> ..."

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 3

Contractor's Extra Expense is subject to a sublimit of 10% of the adjusted loss subject to a maximum of $5,000,000 per Occurrence.

Based upon the information that I have reviewed, it appears to me that Allianz may assert that the sublimit applicable to Contractor's Extra Expense (10% of the adjusted gross loss) is calculated using only the gross loss applicable to the Contractors Installation coverage and that it does not include loss under any of the Policy's other coverages.  If that is Allianz' position, I disagree.  In my professional opinion, the practice of most experienced insurance professionals would be to consider "gross loss" to be the total amount of loss or damage arising from one occurrence after the loss is appropriately measured ("adjusted") and prior to the application of limiting provisions such as deductibles and limits of liability. In my professional opinion, insurance professionals would conclude all loss caused by a single occurrence including loss covered under an endorsement  or extension to a policy is part of the gross loss.  Even if one were to conclude that Allianz' possible approach was reasonable, that interpretation would be but one of two reasonable interpretations.  Insurance professionals endeavoring to handle claims in good faith recognize that when faced with two reasonable interpretations of a policy provision, they should choose the interpretation that provides the insured with the most coverage.

The Policy also provides coverage for Expediting Expenses incurred to expedite the repair of the damaged portion of the project.  The Policy provides:

> "In the event of direct physical loss or damage insured hereunder ... the Company will pay for the reasonable and necessary extra costs to make temporary repairs, and to expedite the permanent repair or replacement of the insured property which is damaged by an insured peril ... In addition, the Company will pay for the reasonable and necessary Extra Expense incurred during the period of restoration and repair that are over and above the total costs that would normally have been incurred during the same period of time had no direct physical loss or damage occurred. Extra Expense shall include equipment rental, emergency expenses, temporary use of property, demobilization and remobilization of equipment and facilities and other expenses necessarily incurred to reduce loss or damage; excluding however, any coverage provided by the Delay in Opening Endorsement if endorsed to this Policy."

Expediting Expenses are subject to a sublimit of 25% of the adjusted loss subject to a maximum of $5,000,000 per Occurrence.

To the extent it is an issue in this case, my opinions regarding the sublimit applying to Contractors Extra Expense would apply equally to Expediting Expenses.

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 4


The Policy was endorsed to include Delayed Opening Insurance often referred to as Delayed
Start-Up or DSU.  The DSU coverage has a limit of liability of $22,950,000 subject to a number
of sub-limits.  The DSU Endorsement provides coverage to SM 10000 for certain financial losses
and expenses that it incurs as the result of a delay in completing the project and opening it in the
manner intended because of covered physical loss or damage to the Project.  The DSU
Endorsement lists the Scheduled Date of Completion as January 1, 2016, which was the original
expiration date of the Policy.  The insuring agreement for this coverage provides:

> "... this Policy is extended to indemnify the Insured, ... for Delayed Start-Up Expenses ...
> as defined in this extension, incurred during the Period of Delay, when such delay is
> caused by direct physical loss or direct physical damage to Insured Property during the
> Period of Insurance ..."

The Endorsement also provides coverage for Additional Extra Expense:

> "The Company shall also pay for expenses that are necessarily incurred by the Insured
> for the purposes of reducing the amount of loss for which the Company is liable but in no
> event shall the aggregate of the expenses payable under this clause exceed the amount by
> which the loss otherwise payable under this extension is thereby reduced. ...

The Endorsement defines Period of Delay as:

> "Period of Delay shall mean the period of time between the Scheduled Date of
> Completion and the actual date on which ... tenant / owner occupancy commenced or
> could have commenced; however, not exceeding such delay as would result if the loss or
> damage were repaired or replaced with the exercise of due diligence and dispatch ..."

The Endorsement defines Scheduled Date of Completion as:

> "Scheduled Date of Completion shall mean the later of the following:
> (I)    The date stated in the Schedule; or
> (ii)   The date on which, but for the insured loss or damage ... tenant/owner
> occupancy would have commenced."

Some insurance policies providing DSU coverage and many people involved in measuring DSU
losses use the date a Temporary Certificate of Occupancy ("TCO") was issued as the measure of
the date on which tenant/owner occupancy could have commenced.  Neither that term or its
acronym appear anywhere in the Policy.  Even in the absence of such policy language there may
be circumstances when a project would be ready to be put to use in the manner originally
planned based solely on the issuance of a TCO.  In such cases the TCO issue date would be used
to measure DSU losses. That is not the case here.

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 5

Although it is not particularly clear, Allianz appears to be raising an issue relating to the Policy's Scheduled Date of Completion and the Policy extension until December 31, 2016. Based upon the material I have reviewed, originally, the Project was to be built by the contractor, Plaza Construction. At that time, the projection was that construction would take 821 calendar days. The Policy was issued effective the anticipated start date and expired 822 days later, which is essentially the projected period of construction Under Plaza's construction contract.

The Project did not, however, start on schedule. There were delays to the start of construction in 2014 and the original contractor was replaced by Swinerton. The estimate of the period of construction increased to 905 days in Swinerton's construction contract. The notice to start construction was actually issued on April 1, 2014, which, based on the 905 day projection, meant completion was projected to occur September 22, 2016. In communications in January 2016, relating to the extension of the Policy, the insurance broker involved with the project, Aon, advised the Allianz underwriters that the Project completion date had been estimated to be September 22, 2016, but in 2014 was extended to October 27, 2016, after the city ordered the installation of a vapor barrier. The broker requested an extension to December 31, 2016, as a "cushion." The Allianz underwriter agreed to the extension for an additional premium of $312,087.

When considering the extension of the Policy, it is important to recognize that coverage for the claims relating to the December 2, 2015 occurrence discussed below applies without regard to the expiration date of the policy. In fact, Allianz underwriter, Erik Schmolka, and the primary claims handler on this matter, Reyes, both so testified in their depositions in this case. Accordingly, the 2016 extension of the Policy had no affect on coverage for claims relating to the December 2nd occurrence. What the review of the timing of the policy and the Project does indicate is that Allianz received 183 days (six months) of premium during which it faced no risk as construction had not started plus more than $300,000 in additional premium for the extension.

During my review of the underwriting material and my review of the depositions of Schmolka, Reyes and her boss Scott Inglis, I note that Allianz did not properly consider and address the fact that the construction plan here involved construction "phases" or "milestones." Often, but not always, a single project is completed at a single point in time. Once that point is reached, the project is put to its intended use. That point in time is the "Scheduled Date of Completion" which is an essential component in calculating a loss under DSU coverage.

Here, as reflected in the contract between SM 10000 and Swinerton, which the Allianz underwriter never reviewed, the Project had four milestones:

    1. Milestone 1. Completion of a leasing office, one mock up unit and some additional work.

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 6

2.  Milestone 2.  Substantial completion of floors 1-15 (96 units), including all amenities and common areas, a proportionate share of parking spaces, support areas and elevators. At the time of the occurrence described below, this Milestone was scheduled to be reached on August 8, 2016.

3.  Milestone 3.  Substantial completion of floors 16-31 (128 units), a proportionate share of parking spaces, support areas and elevators.  At the time of the occurrence described below, this Milestone was scheduled to be reached on September 7, 2016.

4.  Milestone 4.  Substantial completion of floors 32-40 (59 units) and the balance of the Project including all remaining parking spaces, support areas, elevators and roof top gardens.  At the time of the occurrence described below, this Milestone was scheduled to be reached on October 27, 2016.

A key element in calculating a DSU loss is to identify the date on which tenant/owner occupancy would have commenced.  Here, that analysis requires consideration of multiple dates in light of the different milestones identified in the construction contract (which I understand, based upon my review of the information, Schmolka, never reviewed).  The work necessary to reach each Milestone necessarily overlaps the work to reach the remaining Milestones.  For example, each of the occupancy relevant Milestones is dependent on the passenger elevators, which operate in a single shaft.  None of the Milestones could be met until the elevators are in the shaft and servicing the floors in a Milestone.  As an example, the elevator doors on floor 16 are not necessary for Milestone 2 to be reached, but having operational elevators for floors 1 to 15 would be necessary.

It is my professional opinion that it would be contrary to the purpose and intent of the Policy, as that purpose and intent would be viewed by reasonable insurance professionals, to pick a single Milestone and use its scheduled beginning and actual attainment point in calculating a DSU loss. Instead, a reasonable insurance professional endeavoring to handle claims in good faith would read the word "date" in the definition of Scheduled Date of Completion as plural.  Failing to do so could exclude a large portion of a loss that SM 10000 paid a significant premium to insure. The Milestones make the loss calculation more complex, but complexity is not a factor in determining coverage.

**Documents Summaries**

My understanding of the claim at issue and of its handling and investigation was assisted by the following documents which I briefly summarize:

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 7

January 20, 2016, Dancey email to Reyes regarding elevator repair and that elevators on critical path, as without elevators the manlifts on the exterior of the structure cannot be removed.

February 18, 2016, Schindler Damage Report documenting damage to elevators.

March 24, 2016, Dancey email to Reyes regarding mitigation steps.

April 1, 2016, Dancey email to Reyes providing Schindler's damage report (2/8/16) and providing information regarding Schindler's continuing efforts.

April 27, 2016, Dancey email to Reyes reporting that the elevator delays are affecting other trades.

May 13, 2016, Dancey email to Ryan with copy to Reyes regarding elevator related delays.

July 26, 2016, Reyes participated in meeting on site, also, Reyes email to Dancey requesting delay analysis.

August 19, 2016, Reyes' email to Dancey with request for delay analysis.

September 8, 2016, Dancey, Swinerton, email to Reyes with projected costs totaling $1,578,864.

September 13, 2016, Reyes' email to Dancey requesting support for projected costs.

November 28, 2016, Reyes and von Hoetzendorff, broker, exchange emails–no claim yet.

January 3, 2017, Schindler cost summary, $2,695,241.46, sent by Dancey to Reyes; Reyes sent to MKA.

February 14, 2017, Sakotani, Swinerton's RM, email to Reyes–Dancey advising they are overwhelmed with project turnover efforts and that they will respond in 2 to 3 weeks.

March 7, 2017, Swinerton claim summary, $10,014,930.92.

March 8, 2017, Reyes to Newcomb, Koeller Nebecker acknowledging $10,014,930.92 supplemental claim and advising MKA will review.

March 9, 2017, Hoetzendorff, broker, email to Reyes advising Hoy represents SM 10000.

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 8

March 9, 2017, emails Enloe and Reyes regarding retaining Held.

April 7, 2017, Frohlich, SM 10000, RM, letter and email to Reyes advising total claim is $19,169,367 including delayed opening.

April 10, 2017, Reyes email to Enloe at Held with the delayed opening claim.

April 18, 2017, Kornfeld email to Reyes asking if she has everything needed to process the claim.

April 21, 2017, Reyes ' email to Hoy with blank proof of loss form.

April 25, 2017, Reyes' email to Ponzi, advising Kornfeld suggesting a meeting with insured and Allianz consultants and suggesting 5/8, 5/9 or 5/19.

April 25, 2017, Reyes' letter to SM 10000 reserving Allianz' rights and making 39 separate requests, some with up to five subparts.

April 26, 2017, Reyes' email to Ponzi, Enloe and others suggesting meeting first week of June.

April 27, 2017, MKA email to Dancey asking if they have all the hard cost information. Dancey responded that the work and the delay continue.

June 2, 2017, Grossi, Koeller Nebecker, email to Reyes w/link to requested documents.

June 7, 2017, Frohlich email to Reyes w/ notebook of requested documents.

July 10, 2017, Kornfeld email to Ponzi with documents in preparation for July 12th meeting.

July 12, 2017, meeting at site.

July 21, 2017, MKA letter to Reyes with status of review and confirming pending requests for documents.

July 21, 2017, Matson Driscoll email to Reyes with copy of request for documents.

July 24, 2017, Reyes' letter to SM 10000 advising that request for an advance of claim preparation expenses was premature and reaffirming April 25, 2017 reservation of rights.

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 9

August 2, 2017, MKA cost analysis.

August 3, 2017, Reyes' email to Hoy with blank proof of loss.

August 3, 2017, Reyes' letter to Newcomb/Kornfeld reporting damage calculation of $310,854.46 and net claim of $285.854.46, a difference of $25,000

September 14, 2017, Reyes letter to Newcomb, Kornfeld and Hoy following up on requests for documents regarding both claims. Reyes email to Held and counsel inquiring as to receipt of schedules discussed in August 30th call.

September 18, 2017, letter Newcomb to Foran Glennon, providing schedules and other documents regarding the claims.

September 19, 2017, Reyes' email to Held and MKA with Swinerton provided documents.

September 27, 2017, Bergmark letter to Markowitz with rent rolls and information regarding lease-up projections.

September 28, 2017, Kornfeld letter to Foran Glennon requesting tender of $100,000 for claim preparation expenses.

October 1, 2017, Zapp letter to Kornfeld responding to September 28th letter and request for claim preparation expenses and reasons for not being in a position to respond regarding the delay claim.

October 6, 2017, Zapp letter to Newcomb and Hoy with updated RFI and suggesting cancelling meeting planned for October 17th. Held email to Reyes w/updated document request.

October 16, 2017, Koeller Nebecker email to Reyes with link to additional documents.

October 17, 2017, Hoy email to Reyes with link to requested documents and contracts.

November 2, 2017, Zapp email to Hoy with Held RFI and confirming December 5th meeting.

November 7, 2017, Kornfeld letter to Zapp responding in part and objecting in part to November 2nd RFI.

November 15, 2017, Grossi email to Reyes and Zapp with link to documents from Swinerton.

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 10

November 20, 2017, Held 62 page report to Reyes concluding zero days delay.
November 21, 2017, Zapp letter to Kornfeld addressing the concerns over the RFIs.

November 27, 2017, Reyes email to Hoy, Kornfeld and others providing link to Held report.

November 29, 2017, Kornfeld email to Reyes asking if Allianz is relying on Held report to deny coverage and, if not, asking what part of SM 10000's claim does it intend to pay.

December 1, 2017, Reyes email to Kornfeld advising that Allianz has not denied the delay claim and that Allianz does not anticipate making a decision until after a meeting scheduled for December 5th.

December 4, 2017, Email exchange between Kornfeld and Zapp regarding upcoming meeting's purpose.

December 20, 2017, Zapp email to Hoy and Kornfeld with updated RFI as discussed in December 5th meeting.

January 19, 2018, Zapp email to Hoy and Kornfeld asking if SM 10000 intends to respond to the Held report and, if so, when.

January 19, 2018, Hoy email to Zapp advising working on a response and providing loss payee waivers.

January 31, 2018, Zapp email to Hoy, Kornfeld and others regarding status of response to Held report.

March 5, 2018, Kornfeld email to Zapp advising still working on response to document requests.

May 2, 2018, Snow of Foran Glennon to Kornfeld asking about supplemental document production.

June 21, 2018, Hoy letter to Snow advising now represents Swinerton, as well as SM 10000 and providing supplemental production of Swinerton email correspondence.

June 29, 2018, Hoy letter to Snow providing CD with Swinerton's job site photos.

July 10, 2018, Snow email to Hoy asking for emails in native format and asking if they can provide a link between the native documents and the pdfs. Second email same day, Snow to Hoy asking when the waiver from the Bank of China will be provided.

July 12, 2018, Hoy email to Snow advising that Swinerton will provide the load files.

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 11

August 1, 2018, Hoy letter to Snow requesting coverage decision within 30 days.

September 14, 2018, Held issued a supplemental report reaffirming its zero days delay opinion.

November 13, 2018, Hoy letter to Snow advising of a Swinerton email issue that screened out emails from the prior production. He provided copies of the missing emails and again requested Allianz' coverage decision. In a second letter dated November 13th, Hoy provided a copy of the waiver from the Bank of China.

January 25, 2019, Held's second supplemental report finding zero days of delay.

February 6, 2019, Snow email to Hoy with Held's supplemental report.

February 15, 2019, SM 10000's proof of loss for undisputed amount of $285,854.56.

February 19, 2019, Hoy letter to Snow with additional documents that Held's recent report indicated were needed.

February 20, 2019, Snow email to Hoy asking why the proof of loss is not per the policy and not on the form provided.

February 25, 2019, Hoy email to Snow with new proof of loss.

March 18, 2019, Hoy email to Snow asking for Allianz' coverage determination.

March 20, 2019, Snow email to Hoy advising one of Held's personnel left, so that review of recent documents is taking longer. They hope to be done in a week or so.

April 3, 2019, Hoy email to Snow and Snow email to Hoy regarding Perry leaving Held and the reasons for Held's delay in reviewing the newly provided records.

April 10, 2019, Hoy email to Snow regarding delays in reaching a final determination.

April 12, 2019, Snow email to Hoy advising that Held's conclusion had not changed.

April 25, 2019, Reyes letter to Hoy denying SM 10000's claim for delay in project from the December 2, 2015 concrete incident.

May 1, 2019, SM 10000 and Swinerton file suit against Allianz.

October 23, 2020, Xpera Group analysis. Direct 609,545; Expediting 2,327,415; Debris Removal 37,315; Temp Repairs 287,456; GC's Extra Expense 11,005,442; Unrelated 936,626; Total Related 15,036,814.

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 12

**Claims Handling**

As a claims professional reviewing the documents identified above, as well as the depositions of Reyes, her supervisor, Inglis, and the two involved Held personnel, I was troubled by the approach taken by Allianz and its consultant.  For example, they all simply ignored the Milestones and their relationship to the loss.  Both Reyes and Inglis testified that when handling the claim at issue here, they relied on a single date for determining the end date for calculating the "period of delay": the date on which the final TCO was issued on the project, December 10, 2016.  Both claims handlers agreed on that date even though the term "TCO" does not appear anywhere in the Allianz policy, and such an approach is wholly inconsistent with the staggered nature of this project as specified in the construction contract.  Based upon my experience in the insurance industry, this is not a reasonable approach to evaluating claims such as the subject claim.

Additionally, I was surprised and troubled to see that Allianz embraced Held's  evaluation of SM 10000's delay claim as having zero days of delay, as expressed in its reports of November 20, 2017, September 14, 2018 and January 25, 2019.

As a claims handler, claims supervisor and claims manager, I, and personnel I supervise, have hired hundreds, if not thousands of experts to assist confirming and quantifying monetary losses, including many losses and claims relating to events/occurrences that prevent or interfere with business operations.  A goal of claims handling is always to confirm the elements of a claim and to make every reasonable effort to reach as accurate an estimate of the true amount of loss as possible.  Insurance professionals endeavoring to handle claims in good faith, always make an effort to avoid experts who believe that it is their job to minimize or eliminate loss.  In many situations, including in most first party claim situations where the claimant is the insured, I expect my retained experts to work closely with the claimant in attempting to develop an accurate estimate of the loss.  In most cases, the claimant knows the details and idiosyncrasies of the business and its operations and has first hand knowledge about how the occurrence affected those operations.

Although I was not retained to quantify SM 10000's loss under the DSU coverage, when I review claims, I am, in part, considering them from the viewpoint of a claims handler or manager, whose job includes estimating and re-estimating the amounts of losses as the facts are developed.  After having reviewed the facts of the occurrence and considering its likely effects, I expected that there would be a delay in completion.  From my understanding and experience, the elevator system in a high rise building is almost always on or near the critical path of construction.  The elevator subcontractor, for life and safety reasons, did not continue working in the damaged elevator shaft for many weeks, which should have alerted Allianz' claims handlers to an obvious resulting delay of the elevator installation.  The owner, contractor and subcontractors all seem to have understood there was a delay to the elevators that was delaying

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 13

the entire project.  The contractor's schedules reflected a delay.  The contractor spent a large sum of money to expedite the elevator work.  No other source of significant delay was reported, as far as I am aware.  I was, therefore, truly surprised by the zero delay opinion proffered by Held.  Had I received such an opinion as an involved insurance professional I would have had serious doubt about its fairness and accuracy.

The depositions and file material I reviewed indicate that Held did not disclose to SM 10000 the process it was employing to calculate the loss and, instead of conferring with SM 10000, it simply made numerous record requests and then refused to consider records that were not in their desired format, even if those records indicated delay.  Further, Held relied upon the TCOs granted by the city as the end points of the periods of delay.  Based on what I have reviewed and my professional experience, it is readily apparent that the units in Milestones 2, 3 and 4 were not ready for owner/tenant occupancy, as contemplated by the construction contact, until a point in time well after the TCOs were granted.

It is my professional opinion that Reyes, and/or her supervisor, should have recognized the very real possibility that the Held personnel believed that it was their job to advocate for Allianz and to provide Allianz a no or minimal loss opinion.  Reyes should have been working closely with the Held personnel and counseled that their job was to reach a reasonably correct answer.  Further, Reyes and her supervisor should have considered obtaining a second opinion when presented with the zero days of delay opinion.  Accepting  an opinion such as Held proffered is, in my professional opinion, below the standard of care and not consistent with what I would expect from experienced claims professionals endeavoring to handle claims in good faith.  This is particularly the case, in my opinion, because as I read the testimony and documents, Held applied a standard for evaluating delay (and deciding in favor of zero days of delay) that was not consistent with how Allianz' own underwriter understood the process to calculate delay and ignored the actual policy language and the actual facts.

I understand that I may be asked to review additional material and/or depositions.  I reserve the right to change, amend or supplement my opinions following such additional review

These opinions are based on my fifty plus years in the insurance industry and my careful review of the documents listed above.

Attached is a copy of my Curriculum Vitae, which sets forth my background and expertise.

An article of mine was published in a 1994 edition of For The Defense, the magazine of the DRI.  The article dealt with "claim files."  In July 2006, I published an article for Daubert Online, which is a newsletter of the DRI.  That article dealt with claims experts.  I was published twice in Declarations, the magazine of the Excess/Surplus Lines Claim Association.  The 2005 article

**claims resource management, inc.**

October 26, 2020
Our File: 48499
Page 14


dealt with my, then, 37 year perspective of the insurance industry.  The 2008 article dealt with "minimum limit policies and catastrophic injuries."

For this assignment I am billing my time for all activity related to this matter at $350 per hour, plus out-of-pocket expenses.

Attached is a list of cases in which I have testified in the last four years.

Very truly yours,

CLAIMS RESOURCE MANAGEMENT, INC.



Edward J. McKinnon, RPA
President

| EXIBIT A (File: 48499) | | | | |
|---|---|---|---|---|
| Subject | Document Date | Notes | Page | Created |
| SM0000002 - SM 10000 claim | 4/7/2017 | | 21 | 10/23/2020 10:01 |
| AGR US 00007451 | 4/25/2017 | Allianz RoR | 13 | 10/22/2020 8:55 |
| AGR US 00006191 - Cost Summary | 1/3/2017 | | 2 | 10/23/2020 9:53 |
| AGR US 00006098 Projected costs | 9/8/2016 | | 1 | 10/23/2020 9:49 |
| AGR US 00005351 | 2/8/2016 | | 6 | 10/23/2020 9:22 |
| 48499 -000007_AGR US 00005364 | 4/27/2016 | | 2 | 8/21/2020 19:53 |
| 48499 -000006_AGR US 00006268 | 2/13/2017 | | 1 | 8/21/2020 20:33 |
| 48499 -000006_AGR US 00005350 | 4/1/2016 | | 1 | 8/21/2020 19:53 |
| 48499 -000005_AGR US 00006193 | 1/3/2017 | | 2 | 8/21/2020 20:33 |
| 48499 -000005_AGR US 00005347 | 3/24/2016 | | 2 | 8/21/2020 19:53 |
| 48499 -000004_AGR US 00008941 | 11/28/2016 | | 3 | 8/21/2020 20:33 |
| 48499 -000004_AGR US 00005325 | 1/20/2016 | | 1 | 8/21/2020 19:53 |
| 48499 -000003_AGR US 00008934 | 9/13/2016 | | 2 | 8/21/2020 20:33 |
| 48499 -000003_AGR US 00005322 | 1/20/2016 | | 1 | 8/21/2020 19:53 |
| 48499 -000002_AGR US 00008221 | 1/19/2016 | | 1 | 8/21/2020 19:53 |
| 48499 -000002_AGR US 00006096 | 9/8/2016 | | 2 | 8/21/2020 20:33 |
| 48499 -000001_AGR US 00008273 | 8/19/2016 | | 1 | 8/21/2020 20:33 |
| 48499 -000001_AGR US 00008196 | 12/22/2015 | | 2 | 8/21/2020 19:53 |
| 48499 -000000_AGR US 00008261 | 7/14/2016 | | 1 | 8/21/2020 20:33 |
| 48499 -000000_AGR US 00005247 | 12/21/2015 | | 2 | 8/21/2020 19:53 |
| 48499 -000000_AGR US 00004534 | 7/24/2017 | Held RFI | 26 | 8/22/2020 9:20 |
| 48499 - Transmittal of PP to Ms. Reyes | 7/18/2017 | | 2 | 10/13/2020 9:24 |
| 48499 - SM0000001 | 4/7/2017 | | 1 | 10/19/2020 19:00 |
| 48499 - SM 10000 - Updated Request for Information_0001 | 3/5/2018 | | 0 | 10/20/2020 12:27 |
| 48499 - SM 10000 - Updated Request for Information | 5/2/2018 | | 0 | 10/20/2020 12:27 |
| 48499 - ScottInglis_Rough | 10/9/2020 | HO liason - Supervisor | 0 | 10/13/2020 12:37 |
| 48499 - SB40122000 | 11/13/2018 | | 1 | 10/19/2020 19:51 |
| 48499 - SB30110421 (1) | | Swinerton response to Held Request 10/26/17 | 5 | 8/25/2020 8:33 |
| 48499 - SB30098074 | | Swinerton response to MKA request | 1 | 10/19/2020 19:13 |
| 48499 - SB30098068 | 7/24/2017 | | 6 | 10/19/2020 19:12 |
| 48499 - SB30098064 | 9/18/2017 | | 1 | 10/19/2020 19:11 |
| 48499 - SB30098059 Exhibit D | | Delays executive narrative | 5 | 10/19/2020 19:13 |
| 48499 - SB30081294 | | | 105 | 10/19/2020 19:15 |
| 48499 - SB30081293 (1) | | | 1 | 10/19/2020 19:14 |
| 48499 - SB30026524 | 3/7/2017 | Claim summary | 10 | 8/25/2020 8:07 |
| 48499 - Reyes Lourdes 10-07-20 ROUGH | 10/7/2020 | Claims handler | 0 | 10/11/2020 11:46 |
| 48499 - Policy (SM 10000) | 10/1/2013 | | 37 | 10/11/2020 11:35 |
| 48499 - PMQOfAllianzGlobalRisksUsInsuranceCompanyEricSchmolka_COND | 9/17/2020 | Allianz underwriter | 89 | 10/11/2020 11:30 |
| 48499 - MMD 00021011 | 9/27/2017 | | 88 | 10/19/2020 20:48 |
| 48499 - MKA 00038056 | 8/2/2017 | MKA cost analysis | 10 | 10/19/2020 19:08 |
| 48499 - long-as-built-schedule-delay | | | 25 | 10/19/2020 16:04 |

| | | | | |
|---|---|---|---|---|
| 48499 - LisaEnloe_COND | 7/29/2020 | Allianz' delay expert | 128 | 10/13/2020 9:24 |
| 48499 - JS HELD 00070255 | 11/20/2017 | Held RFI | 26 | 10/19/2020 19:19 |
| 48499 - JS HELD 00067443 | 9/14/2018 | | 18 | 10/19/2020 19:47 |
| 48499 - JS HELD 00046010 | 11/20/2017 | | 62 | 10/19/2020 19:18 |
| 48499 - JonathanPerry_COND | 8/5/2020 | Allianz delay expert assistant | 132 | 10/13/2020 9:26 |
| 48499 - Forensic Schedule Analysis | 4/25/2011 | | 2 | 10/13/2020 9:27 |
| 48499 - Exhibit 0127 - 2017-05-07 McCoy email to Kennedy etc. (AGR US 00004033) | 10/13/2020 | | 7 | 10/13/2020 12:37 |
| 48499 - Exhibit 0126 - 2017-04-10 Inglis email to Reyes w_attchments (AGR US 00003404) | 10/13/2020 | | 25 | 10/13/2020 12:37 |
| 48499 - Exhibit 0109 - 2016-01-28 Schmolka email to Mason Benabe [AGR_US_UW 00000371-77 etc] | 10/11/2020 | | 258 | 10/11/2020 11:30 |
| 48499 - Exhibit 0108 - 2016-01-27 Schmolka email to Benabe [AGR_US_UW 00000997-98] | 10/11/2020 | | 2 | 10/11/2020 11:30 |
| 48499 - Exhibit 0107 - 2016-01-21 Chung email to Mason et al [AGR US 00003704-07] | 10/11/2020 | | 4 | 10/11/2020 11:30 |
| 48499 - Exhibit 0106 - 2015-12-21 Schmolka email to Benabe [AGR US 00005239-40 w attachment] | 10/11/2020 | | 8 | 10/11/2020 11:30 |
| 48499 - Exhibit 0105 - 2015-12-21 Boschee email [AGR US 00005247-48 w attachment] | 10/11/2020 | | 8 | 10/11/2020 11:30 |
| 48499 - Exhibit 0104 - pub_delay_in_startup_insurance_en | 10/11/2020 | | 36 | 10/11/2020 11:30 |
| 48499 - Exhibit 0103 - 2020-09-15 SM 10000 2nd Amd NOD of Schmolka 09.17.2020 | 10/11/2020 | | 6 | 10/11/2020 11:30 |
| 48499 - Exhibit 0014 - Apr 11, 2016 Schedule (Elevator Room) | | | 1 | 10/13/2020 9:27 |
| 48499 - Exhibit 0013 - AGR US 00006758 | 4/10/2017 | | 3 | 10/13/2020 9:26 |
| 48499 - Exhibit 0012 - AGR US 00006403 | 4/13/2017 | | 2 | 10/13/2020 9:26 |
| 48499 - Exhibit 0011 - IR SM 10000 Final Exhibits Claim No. P01091748 LR JS HELD 00046867 | | | 21 | 10/13/2020 9:26 |
| 48499 - Exhibit 0010 - JSH invoice JS HELD 00072884 | 4/10/2017 | | 5 | 10/13/2020 9:26 |
| 48499 - Exhibit 0009 - aace_recommended_practice_forensic_schedule_impact_analysis-29r-03 | | | 135 | 10/13/2020 9:26 |
| 48499 - Exhibit 0008 - Builders Risk Measuring Delay for ABA4 | | | 16 | 10/13/2020 9:26 |
| 48499 - Exhibit 0007 - JSH Invoice JS HELD 00042249 | 1/5/2018 | | 4 | 10/13/2020 9:25 |
| 48499 - Exhibit 0006 - JS Held Report of Findings (19 Jan 2019) JS HELD 00072284 | 1/25/2019 | | 21 | 10/13/2020 9:25 |
| 48499 - Exhibit 0005 - 091418 JS Held Report pdf JS HELD 00067443 | 9/14/2018 | | 18 | 10/13/2020 9:25 |
| 48499 - Exhibit 0004 - JS Held Report 11202017 JS HELD 00046010 | 11/20/2017 | | 62 | 10/13/2020 9:25 |
| 48499 - Exhibit 0003 - JS Held Report Attachment 14 - Schedule received Report 01 JS HELD 00046900 | 10/13/2020 | | 1 | 10/13/2020 9:25 |
| 48499 - Exhibit 0002 - Signed GMP Construction Contract JS HELD 00021272 | 11/14/2013 | | 41 | 10/13/2020 9:25 |
| 48499 - Exhibit 0001 - Allianz Insurance Policy SM0056512 | 10/1/2013 | | 37 | 10/13/2020 9:24 |
| 48499 - Exhibit - 0125 - 2019-04-25 Claim Denial Letter (ALT_00013) | 10/11/2020 | | 6 | 10/11/2020 11:45 |
| 48499 - Exhibit - 0124 - 2019-08-20 Claim Notes [AGR US 00002943] | 10/11/2020 | | 76 | 10/11/2020 11:44 |
| 48499 - Exhibit - 0123 - 2020-10-06 Defendant's Response and Objections | 10/11/2020 | | 20 | 10/11/2020 11:44 |
| 48499 - Exhibit - 0017 - AGRUS00006301 (Policy and End. 1-11) | 10/11/2020 | | 50 | 10/11/2020 11:43 |
| 48499 - Document (1) | 10/20/2020 | | 0 | 10/20/2020 11:00 |
| 48499 - ALT_00013 | 4/25/2019 | | 6 | 10/5/2020 14:27 |
| 48499 - Allianz 7-12-17 Meeting Presentation Revised 7-10-17 (1) | 7/12/2017 | | 0 | 10/13/2020 9:23 |
| 48499 - AGR US 00012335 | 12/20/2017 | | 1 | 8/25/2020 8:38 |
| 48499 - AGR US 00009890 | 12/14/2017 | Held RFI | 2 | 10/19/2020 19:23 |
| 48499 - AGR US 00007927 | 9/14/2017 | | 3 | 10/19/2020 20:40 |
| 48499 - AGR US 00007777 | 7/24/2017 | No on claim prep costs advance | 3 | 10/22/2020 10:38 |

| | | | | |
|---|---|---|---|---|
| 48499 - AGR US 00005413 | 8/2/2016 | | 2 | 10/19/2020 20:30 |
| 48499 - AGR US 00005397 | 5/13/2016 | | 2 | 10/19/2020 18:53 |
| 48499 - AGR US 00005159 | 10/26/2017 | Held RFI | 27 | 8/25/2020 8:36 |
| 48499 - AGR US 00004966 | 9/28/2017 | | 2 | 10/19/2020 19:16 |
| 48499 - AGR US 00000467 | 6/21/2018 | | 1 | 10/19/2020 19:36 |
| 48499 - AGR US 00000417 | 2/19/2019 | | 1 | 10/19/2020 19:54 |
| 48499 - AGR US 00000410 - 00000416 | 2/6/2019 | | 7 | 10/19/2020 19:54 |
| 48499 - AGR US 00000261 - 00000262 | 11/13/2018 | | 2 | 10/19/2020 19:49 |
| 48499 - AGR US 00000255 - 00000258 | 2/25/2019 | | 4 | 10/19/2020 19:56 |
| 48499 - 2019-04-12 Snow Email w attachment | 4/12/2019 | Hoy/Snow email chain | 6 | 10/19/2020 20:15 |
| 48499 - 2019-04-10 Hoy Email to Snow | 4/10/2019 | | 5 | 10/19/2020 20:15 |
| 48499 - 2019-04-03 Snow Email | 4/3/2019 | | 4 | 10/19/2020 20:12 |
| 48499 - 2019-04-03 Hoy Email to Snow | 4/3/2019 | | 3 | 10/19/2020 20:13 |
| 48499 - 2019-03-20 Snow Email | 3/20/2019 | | 2 | 10/19/2020 20:11 |
| 48499 - 2019-03-18 Hoy Email to Snow | 3/18/2019 | | 1 | 10/19/2020 20:06 |
| 48499 - 2019-02-20 Snow Email w attachment | 2/20/2019 | | 6 | 10/19/2020 20:09 |
| 48499 - 2019-02-19 Swinerton POL | 2/15/2019 | | 3 | 2/19/2019 15:07 |
| 48499 - 2019 05 01 Complaint | 5/1/2019 | | 63 | 10/11/2020 11:35 |
| 48499 - 2018-08-01 Hoy Letter to Snow | 8/1/2018 | | 2 | 8/1/2018 12:22 |
| 48499 - 2018-07-12 Hoy Email to Snow | 7/12/2018 | | 2 | 10/19/2020 19:44 |
| 48499 - 2018-07-10 Snow Email re search parameters | 7/10/2018 | | 1 | 10/19/2020 19:41 |
| 48499 - 2018-07-10 Snow Email re Bank of China | 7/10/2018 | | 4 | 10/19/2020 19:42 |
| 48499 - 2018-06-29 Letter to Snow encl CD of Swinerton job site photos | 6/29/2018 | | 1 | 10/19/2020 19:40 |
| 48499 - 2018-01-31 Zapp Email re RFI | 1/31/2018 | | 3 | 10/19/2020 19:26 |
| 48499 - 2018-01-31 Zapp Email re Response to Report | 1/31/2018 | | 3 | 11/11/2019 12:07 |
| 48499 - 2017-11-22 SM 10000 - Letter to Counsel RFIs (Final 11-22-17) | 11/22/2017 | Zapp to Kornfeld | 4 | 11/22/2017 13:02 |
| 48499 - 000053_MMD 00020889 | 11/7/2017 | | 3 | 8/21/2020 20:34 |
| 48499 - 000052_MKA 00037950 | 7/21/2017 | | 3 | 8/21/2020 20:34 |
| 48499 - 000051_AGR US 00005027 | 10/6/2017 | | 2 | 8/21/2020 20:34 |
| 48499 - 000050_AGR US 00004534 | 7/24/2017 | Held RFI | 26 | 8/21/2020 20:34 |
| 48499 - 000049_AGR US 00004973 | 10/1/2017 | | 5 | 8/21/2020 20:34 |
| 48499 - 000047_AGR US 00002943 | | Allianz file notes | 76 | 8/21/2020 20:34 |
| 48499 - 000046_AGR US 00009897 | 1/19/2018 | | 3 | 8/21/2020 20:34 |
| 48499 - 000045_AGR US 00012335 | 12/20/2017 | | 1 | 8/21/2020 20:34 |
| 48499 - 000044_AGR US 00012304 | 12/4/2017 | | 5 | 8/21/2020 20:34 |
| 48499 - 000043_AGR US 00012301 | 12/4/2017 | | 3 | 8/21/2020 20:34 |
| 48499 - 000042_AGR US 00012298 | 12/1/2017 | | 3 | 8/21/2020 20:34 |
| 48499 - 000041_AGR US 00012155 | 11/15/2017 | | 1 | 8/21/2020 20:34 |
| 48499 - 000040_AGR US 00005157 | 11/2/2017 | | 2 | 8/21/2020 20:34 |
| 48499 - 000039_AGR US 00005136 | 10/26/2017 | | 5 | 8/21/2020 20:34 |
| 48499 - 000038_AGR US 00008124 | 10/18/2017 | | 4 | 8/21/2020 20:34 |
| 48499 - 000037_AGR US 00005108 | 10/17/2017 | | 1 | 8/21/2020 20:34 |
| 48499 - 000036_AGR US 00005073 | 10/16/2017 | | 3 | 8/21/2020 20:34 |

| | | | | |
|---|---|---|---|---|
| 48499 - 000035_AGR US 00005069 | 10/12/2017 | | 2 | 8/21/2020 20:34 |
| 48499 - 000034_AGR US 00005031 | 10/9/2017 | | 2 | 8/21/2020 20:34 |
| 48499 - 000033_AGR US 00005029 | 10/9/2017 | | 2 | 8/21/2020 20:34 |
| 48499 - 000032_AGR US 00005026 | 10/6/2017 | | 1 | 8/21/2020 20:34 |
| 48499 - 000031_AGR US 00004994 | 10/6/2017 | | 1 | 8/21/2020 20:34 |
| 48499 - 000030_AGR US 00004971 | 10/1/2017 | | 2 | 8/21/2020 20:34 |
| 48499 - 000029_AGR US 00007933 | 9/19/2017 | | 3 | 8/21/2020 20:34 |
| 48499 - 000028_AGR US 00007921 | 9/14/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000027_AGR US 00006521 | 8/30/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000026_AGR US 00004746 | 8/25/2017 | | 2 | 8/21/2020 20:33 |
| 48499 - 000025_AGR US 00007870 | 8/3/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000024_AGR US 00006517 | 7/27/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000023_AGR US 00004533 | 7/24/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000022_AGR US 00007776 | 7/24/2017 | | 1 | 10/20/2020 13:23 |
| 48499 - 000021_AGR US 00004521 | 7/21/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000020_AGR US 00004517 | 7/21/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000019_AGR US 00004460 | 7/18/2017 | | 2 | 8/21/2020 20:33 |
| 48499 - 000018_AGR US 00004439 | 7/10/2017 | | 3 | 8/21/2020 20:33 |
| 48499 - 000017_AGR US 00007689 | 7/10/2017 | | 2 | 8/21/2020 20:33 |
| 48499 - 000016_AGR US 00007688 | 7/10/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000015_AGR US 00004283 | 6/7/2017 | | 2 | 8/21/2020 20:33 |
| 48499 - 000014_AGR US 00004215 | 6/2/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000013_AGR US 00007464 | 4/26/2017 | | 1 | 8/21/2020 20:33 |
| 48499 - 000012_AGR US 00007422 | 4/25/2017 | | 2 | 8/21/2020 20:33 |
| 48499 - 000011_AGR US 00007391 | 4/21/2017 | | 2 | 8/21/2020 20:33 |
| 48499 - 000010_AGR US 00003379 | 4/10/2017 | | 2 | 8/21/2020 20:33 |
| 48499 - 000009_AGR US 00006378 | 3/9/2017 | | 3 | 8/21/2020 20:33 |
| 48499 - 000009_AGR US 00005379 | 4/27/2017 | | 3 | 8/21/2020 19:53 |
| 48499 - 000008_AGR US 00006366 | 3/8/2017 | | 2 | 8/21/2020 20:33 |
| 48499 - 000008_AGR US 00005366 | 4/27/2016 | | 2 | 8/21/2020 19:53 |
| 48499 - 000007_AGR US 00006269 | 2/14/2017 | | 1 | 8/21/2020 20:33 |
| 48499 | 10/12/2020 | Consultant Engagement Form, Signed | 0 | 10/12/2020 15:47 |

## CURRICULUM VITAE

## EDWARD J. MCKINNON

<u>EDUCATION</u>

**University of Maryland and Merrit College, Oakland, California**

1966 - 1967



<u>MILITARY SERVICE</u>

**U.S. Army Intelligence Corps,** 1966-1969.  Including service in Vietnam, 1968.

<u>PROFESSIONAL EXPERIENCE</u>

**Claims Resource Management, Inc.**  1988-Present

President and founder

**Harbor Insurance Co.,** 1973-1988

Adjuster, 1973-1974
Assistant Branch Manager, 1974-1977
Home Office Property Claims Manager, 1977-1978
Assistant Vice President, 1978-1980
Vice President and General Claims Manager, 1980-1987
Senior Vice President, 1988
Member, Board of Directors, 1988

**GAB (General Adjustment Bureau),** 1969-1973

Multi-line claims adjuster, handling all types of claims from auto and homeowners to large commercial property and casualty losses.

claims resource management, inc.
P.O. Box 250  •  33345 Santiago Road  •  Acton, California 93510
Telephone: (661) 265-6400  •  Fax: (661) 265-6450  •  www.crmi.com

4/2019

<u>PROFESSIONAL AFFILIATIONS</u>

**Excess/Surplus Lines Claims Association**
President, 1986
Member, Board of Directors, 1984-1987

**Federation of Defense and Corporate Counsel**
Committee on Alternate Fee Arrangements, 1993
Litigation Management College Faculty, 1994-1996
Vice Chairman - Excess/Surplus Lines Section, 1996-1998
Litigation Management College Advisory Council, 1997-1998
Chairman - Excess/Surplus Lines Section, 1998-2000
Vice Chair - Technology and E-Commerce Committee, 1999-2003
Chair - Technology and E-Commerce Committee, 2003 - 2006

<u>OTHER PROFESSIONAL ACTIVITIES</u>

**Insurance Institute of America**
Instructor, 1979.

**Fox & Co., Certified Public Accountants, Los Angeles.**
Speaker on **Business Interruption Claims Evaluation**, June 1980.

**Law Offices of Buchalter, Nemer, Fields & Younger, Los Angeles.**
Speaker on **Insurance Company Operations**, August 1988.

**Excess/Surplus Lines Claims Association, Marco Island, Florida.**
Panelist, **Panel on Current Reinsurance Issues**, September 1988.

**Law Offices of Sheft & Sweeny, New York.**
Conducted Seminar on **Current Trends in Directors & Officers Claims**, March, 1989.

**Property Claims Forum of Sacramento, California**.
Panelist, **Contamination Seminar,** May 1989.

**Property Loss Research Bureau, San Diego, California.**
Panelist, **Contamination Workshop**, March 1990.

**Excess/Surplus Lines Claims Association, Sandestin, Florida.**
Panelist, **Panel on Alternatives to Lawyers for Claim Work,** October 1990.

claims resource management. inc.
P.O. Box 250 • 33345 Santiago Road • Acton. California 93510
Telephone: (661) 265-6400 • Fax: (661) 265-6450 • www.crmi.com

4/2019

OTHER PROFESSIONAL ACTIVITIES (CONTINUED)

**FICC Claim College**
Faculty, 1995-1996.

**Mealey Publications, Inc., Conference, Laguna Niguel, California.**
Speaker on **Recent Trends in Directors and Officers Insurance**, February 1997.

**Home Builders Association, Seminar, San Luis Obispo, California.**
Panelist, **Responding to the Mold Menace**, May 2002.

**Pismo Coast Association of Realtors, Seminar, San Luis Obispo, California.**
Panelist, **Responding to the Mold Menace**, July 2002.

**Atascadero Association of Realtors, Seminar, Atascadero, California.**
Panelist, **Responding to the Mold Menace**, November 2002.

**San Joaquin Environmental, Inc., Seminar, Fresno, California.**
Panelist, on **Mold and Insurance**, August 2003.

**Joint International Conference, Barcelona, Spain.**
Speaker on **International Product Safety**, May 2004.

**American Bar Association, Insurance Coverage Litigation Committee, CLE Seminar, Tucson, Arizona.**
Speaker on **Insurance Expert Witnesses**, March 2005.

**Association of Southern California Defense Counsel, 46th Annual Seminar, Los Angeles, California**
Panelist, **Handling Professional Liability Claims,** February 2007.

**Association of Southern California Defense Counsel, 52nd Annual Seminar, Los Angeles, California**
Speaker on **How Come My Case Never Gets to Trial?**, February 2013.

**Casualty Loss Reserve Seminar, San Diego, California**
Panelist, **Current Issues in Construction Defects**, September 2014.

**National Conference of Insurance Guaranty Funds, Ft. Lauderdale, Florida**
Panelist, **Emerging Issues Forum**, November 2015.

**CLM National Construction Claims Conference, San Diego, California**
Speaker on **Northwest Region - Coverage and Extra-Contractual Claims: A Construction Defect Perspective**, September 2016.

claims resource management, inc.
P.O. Box 250 • 33345 Santiago Road • Acton, California 93510
Telephone: (661) 265-6400 • Fax: (661) 265-6450 • www.crmi.com

4/2019

OTHER PROFESSIONAL ACTIVITIES (CONTINUED)

**CLM 2017 Webinar Series: Extra-Contractual Committee**
Presenter on **Contest of Consent: Challenging Consent Judgments**, April 2017.

**West Coast Casualty's Construction Defect Seminar, Anaheim, California**
Panelist, **Northwest Coverage and Extra-Contractual Claims: A Construction Defect Perspective**, May 2017.

**CLM New York Conference, New York, New York**
Speaker on **Was the Notice of Circumstance Sufficient to Preserve Coverage for a Future Claim?**, November 2017.

**West Coast Casualty's Construction Defect Seminar, Anaheim, California**
Panelist, **Northwest Insurance Coverage and Extra-Contractual Issues**, May 2018.

OTHER

**Licensed Insurance Adjuster in:**

| | | |
|---|---|---|
| **Alaska, license 33891** | **Nevada, license 84179** | **South Carolina, license 369563** |
| **Arizona, license 1039675** | **New Mexico, license 157821** | **Texas, license 1232983** |
| **California, license 2772917** | **New York 1514311** | **Utah, license 206857** |
| **Connecticut, license 995443** | **North Carolina, license 394822** | **Washington, license 116436** |
| **Florida, license E078596** | **Oklahoma, license 100178719** | |
| **Idaho, license 311435** | **Oregon, license 745003** | |

**Registered Professional Adjuster, register number 170**

**ARIAS U.S. Certified Arbitrator**

claims resource management, inc.
P.O. Box 250  •  33345 Santiago Road  •  Acton, California 93510
Telephone: (661) 265-6400  •  Fax: (661) 265-6450  •  www.crmi.com

4/2019

**EXPERT TESTIMONY**
**(Past Four Years)**

10/05/20

| Reference | CAPTION | Venue | Docket | Deposition | Trial |
|-----------|---------|-------|--------|------------|-------|
| 39310 | Jordan Mozer & Associates, Ltd. vs. General Casualty Company of Wisconsin | USDC Northern District of Illinois Eastern Divsion | 1:14-CV-10264 | 10/28/15 | 10/30/17 |
| 39551 | John Crane Inc. vs. Admiral Insurance Company | Circuit Court of Cook County, Illinois | 04-CH-08266 | 01/12/16 | 03/23/17 |
| 40109 | AMTrust North America, Inc. and Technology Insurance Company, Inc. vs. Safebuilt Insurance Services, a/k/a Safebuilt Wholesale Insurance Services, Inc., The Taft Companies, LLC, Preferred Global Holdings, Inc. David E. Pike, David E. Pike, Inc., Philip Salvagio, Salmen Insurance Services, Inc. f/k/a Salvagio, Inc., Carl M. Savoia, John Doe Corporations 1 – 5 and John Does 1-5 | Arbitration in USDC Southern District of New York | 14-cv-9494 | 09/09/16 | 10/26/16 |
| 41120 | Woodgrain Millwork, Inc., an Oregon corporation; Windsor Window Company, an Idaho corporation vs. Wesco Insurance Company, a Delaware corporation; and Does 1 through 100, inclusive | USDC Southern District of California | 3:15-cv-02500-DMS-KSC | 12/02/16 | |
| 41184 | Wausau Underwriters Ins. Co a Wisconsin Co., and Marine Exhaust Systems, Inc. adv. Luther W. Horton and Horton, Oberrecht, Kirkpatrick & Martha, APC and Does 1 – 100 | Superior Court of California, County of San Diego | 37-2015-00030090-CU-BC-CTL | 11/21/16 | 05/17/18 |
| 41259 | National Union Fire Insurance Company of Pittsburg, PA vs. Mid-Century Insurance Company, Calportland Company, Calmat Co., and Does 1 – 30 | Superior Court of California, County of San Francisco | CGC-14-540942 | 12/09/16 | |
| 41423 | Cyrusone, LLC and Cincinnati Bell Inc. vs. Great American Insurance Company | Court of Common Pleas, Hamilton County, Ohio | A-1504669 | 04/18/17 | |
| 41572 | Hugh Lubkin, vs. Farmers Insurance Company, Inc; Sam Michaelson; and Does 1 to 100 | Superior Court of California, County of Sacramento | 34-2012-00129861 | 01/20/17 | |
| 41819 | John Michael DeFrenza v. Progressive Insurance Company, DOES 1-10 and ROE Corporations 11-25 | USDC Eastern District of California | 1:16-CV-00736-AWI-JLT | 05/31/17 | |
| 41859 | Nathan Wolcott, et al. v. Willis of Ohio, Inc. et al. | USDC Northern District of Ohio Eastern Division | 4:16-cv-00316 | 04/11/17 | |
| 41874 | Guerra vs. Barron Law Group | Superior Court of California, County of Sacramento | 34-2014-00169032 | 02/03/17 | |
| 42206 | Dennis Duitch and Nancy Duitch vs. Travelers Insurance Co; Travelers Commercial Insurance Co; Does 1 – 50 | USDC Central District of California, Western Division | 2:16-cv-05625-PSG-JC | 06/26/17 | |
| 42401 | Rima Salloum vs. Wawanesa General Insurance Company; and Does 1 – 20 | Superior Court of California, County of San Diego | 37-2016-00004764-CU-IC-CTL | 10/03/17 | |
| 42975 | Philadelphia Indemnity Insurance Co. adv. IEC Corporation | USDC Central District of California – Southern Division | 8:16-CV-295-DOC-DFM | 05/09/18 | |
| 43074 | Young America Insurance Co adv. Glenda Burch and James Martin | Circuit Court of Jackson County, MI at Kansas City | 1616-CV05057 | 09/13/17 | |
| 43089 | Rockhill Insurance Co. adv. CFI-Global Fisheries Management | USDC District of Colorado | 1:16-cv-02760-RM-MJW | 10/12/17 | |
| 43234 | Access Business Group LLC vs. Trust Temporary Services, Inc., National Union Insurance Company, Greenwich Insurance Company and Does 1-20 | Superior Court of the State of California, County of Orange, Central Justice Center | 30-2015-00824907-CU-CO-CJC | 10/19/17 | |

**EXPERT TESTIMONY**
**(Past Four Years)**

**10/05/20**

| Reference | CAPTION | Venue | Docket | Deposition | Trial |
|---|---|---|---|---|---|
| 43652 | Farmers Insurance Company adv. Nanney | State of New Mexico, County of Bernalillo, Second Judicial District Court | D-202-CV-2016-05043 | 01/04/18 | |
| 44485 | Interinsurance Exchange adv Julie Kirk | Superior Court of California, County of Los Angeles | BC630494 | 02/16/18 | |
| 44682 | First American Specialty Ins Co adv. Fontana | Superior Court of California, County of Los Angeles | BC 658 141 | 08/06/18 | |
| 45209 | Uecker Insurance Agency adv. McManus and Trinkle | Superior Court of California, County of San Joaquin | STK-CV-UIC-2017-5518 | 07/23/18 | |
| 45449 | Gibraltar/Riverstone adv. SPX Corp | Superior Court of North Carolina, County of Mecklenburg | 16-CVS-15605 | 08/09/18 | |
| 45623 | Travelers adv. Tucker | Superior Court of California, County of San Francisco | CGC-17-560073 | 11/16/18 | |
| 45752 | Tyson & Mendes adv. Financial Indemnity Co | Superior Court of California, County of San Diego – Central Division | 37-2017-00024686-CU-PN-CT | 11/12/18 | |
| 45935 | Allied Professionals Ins Co adv. Robert K. Harmon | American Arbitration Association | 01-17-0004-6881 | 10/30/18 | |
| 46520 | Rockhill adv. CSAA/Premier Restoration | USDC District of Nevada | 3:17-cv-00496-HDM-WGC | 05/07/19 | |
| 46352 | USAA adv. Frutiger | USDC District of Arizona | 2:18-CV-00547 | 06/20/19 | |
| 46686 | Ark Syndicate Management Ltd adv. Coast Insurance Adjusters/Gemini | JAMS ADR | JAMS Ref: 1220058407 | 06/21/19 | |
| 46925 | Hudson Insurance Co adv. Unity | USDC Central District of California, Western Division | 2:18-CV-08143-RGK-GJS | 08/23/19 | |