ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
VALENTINE S. HOY (BAR NO. 121766)
TIMOTHY M. HUTTER (BAR NO. 267949)
CATRIONA LAVERY (BAR NO. 310546)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: vhoy@allenmatkins.com
thutter@allenmatkins.com
clavery@allenmatkins.com

LINDA KORNFELD (BAR NO. 155765)
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Phone: (424) 239-3824
Fax: (424) 239-3434
E-Mail: lkornfeld@blankrome.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SM 10000 PROPERTY, LLC, a Delaware limited liability company and SWINERTON BUILDERS, a California Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLIANZ GLOBAL RISKS US INSURANCE COMPANY and DOES 1 through 10,<br><br>Defendant. | Case No. 19-CV-03054-PJH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY OF J.S. HELD WITNESSES**<br><br>Date: September 16, 2021<br>Time: 2:00 p.m.<br>Ctrm: 3<br><br>Trial Date: October 18, 2021 |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 5

II. ARGUMENT .......... 6

A. J.S. Held's Analysis is Not Relevant Based on Policy Language .......... 6

1. J.S. Held's Analysis of the End of the Period of Delay is Not Consistent with the Court's Order .......... 7

2. J.S. Held Cannot Offer Opinions To Dispute the Accuracy of the Prospective Pre-Loss Schedule .......... 8

B. J.S. Held's Analysis Is Not Reliable .......... 9

1. J.S. Held's Method is not Cited in Any Case and Has Never Been Utilized in Any Court .......... 10

2. The Only Publication Recognizing J.S. Held's Method Was Written to Draw Attention to the Bizarre Approach Used by J.S. Held .......... 11

3. Allianz Attempts to Describe J.S. Held's Method in AACE Terms Despite J.S. Held Witnesses Admitting That They Are Not Mentioned .......... 12

4. J.S. Held Ignored the Critical Path and Does Not Follow Industry Standards .......... 14

5. Disregarding the Critical Path Renders J.S. Held's Analysis Unreliable .......... 14

6. J.S. Held's Assumption that TCO #4 Signals the End of the Period of Delay Renders its Opinions Unreliable .......... 15

7. J.S. Held Failed to Consider Significant Factors Relating to the Project .......... 17

III. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AIU Ins. Co. v. Superior Court*,
51 Cal.3d 807 (1990) ........ 16

*Blinderman Constr. Co. v. United States*,
39 Fed. Cl. 529 (1997) ........ 10

*Bourjaily v. United States*,
483 U.S. 171 (1987) ........ 6

*Claar v. Burlington Northern R.R. Co.*,
29 F.3d 499 (9th Cir 1994) ........ 10, 17

*Daubert v. Merrell Dow Pharm.*,
43 F.3d 1311 (9th Cir. 1995) ........ 10

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ........ 6

*Fortec Constructors v. United States*,
8 Cl. Ct. 490 (1985) ........ 10

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997) ........ 10

*George Sollitt Constr. Co. v. United States*,
64 Fed. Cl. 229 (2005) ........ 11

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ........ 10

*MacKinnon v. Truck Ins. Exch.*,
31 Cal. 4th 635 (2003) ........ 16

*Palp, Inc. v. Williamsburg Nat'l Ins. Co.*,
200 Cal. App. 4th 282 (2011) ........ 16

*Rustler Constr., Inc. v. District of Columbia*,
211 A.3d 187 (D.C. 2019) ........ 11

*Safeco Ins. Co. v. Robert S.*,
26 Cal. 4th 758 (2001) ........ 16

*St. Mary & St. John Coptic Orthodox Church v. SBC Ins. Servs., Inc.*,
57 Cal. App. 5th 817 (2020) ........ 16

*United States for McCullough Plumbing, Inc. v. Halbert Construction Co., et. al.*,
No. 3:17-cv-00803-CAB-WVG (S.D. Cal.) ........ 13

*Univ. of Judaism v. Transamerica Ins. Co.*,
61 Cal. App. 3d 937 (1976) ........ 16

**Page(s)**

**Rules**

Fed. R. Civ. P. 702 ........................................................................................................ 6, 9, 10

## I. INTRODUCTION

This case centers on the determination of two dates: the Scheduled Date of Completion, which begins the Period of Delay, and the "actual date on which commercial operations or tenant / owner occupancy commenced or could have commenced," which ends the Period of Delay. Allianz witnesses from consultant J.S. Held cannot offer relevant or reliable opinions on either date, and should therefore be excluded from testifying at trial.

Allianz criticizes Bumgardner for performing a retrospective analysis relating to the end of the Period of Delay, contending that Plaintiffs must choose a prospective analysis or a retrospective analysis, but not both. Not true. Although Bumgardner's analysis is not the subject of this motion, he appropriately studied the Pre-Loss Schedule to determine if it needed any adjustment or if it was attainable at the time it was issued. That analysis is consistent with the Court's Summary Judgment Order interpreting section 12A(ii) to require a prospective analysis focused on the planned date, before the loss event, in determining the start date of the Period of Delay. Allianz' consultant Granger Stuck admits he did not form any opinions about the accuracy of the Pre-Loss Schedule, instead performing a *retrospective* analysis to determine if there were other delays that would have affected the Project's date of completion regardless of the Loss Event. Stuck's opinions about the beginning of the Period of Delay are thus irrelevant and should be excluded.

J.S. Held cannot offer relevant opinions about the other critical date for this case – the end of the Period of Delay – either. That is because J.S. Held witnesses admitted in deposition and in Mr. Stuck's report that their analysis was founded on and limited to an instruction from counsel "to assume that 'the actual date on which commercial operations or tenant/owner occupancy commenced or could have commenced' is the actual date when all temporary certificates of occupancy ('TCO') for the project were achieved…" Thus, for purposes of assessing the end of the Period of Delay, J.S. Held's only "analysis" was to ascertain the date that the last TCO was issued. That date is not in dispute – it is December 10, 2016. The problem for Allianz is that the TCO date is not relevant to the determination of when tenant occupancy began – as to the entire Project or even as to the first units – since even Allianz acknowledges that neither occurred on

December 10, 2016, and J.S. Held's designated consultant admits that he did not investigate or form an opinion about when unit turnover or occupancy actually occurred. By contrast, Bumgardner studied Project records, performed a retrospective analysis, and evaluated the critical path of the Project to determine that (a) substantial completion of Milestone 4 occurred on April 27, 2017, and (b) the delay in completion was attributable to the Loss Event. Because J.S. Held stopped after confirming the date of TCO 4, their opinions about the end of the Period of Delay should be excluded as irrelevant.

Beyond concerns about relevance, J.S. Held witnesses also deviated from acceptable industry standards to such a degree that their testimony would be unreliable. Their methods have never been admitted in any court proceeding, nor documented in any industry guidance. Further, the witnesses admit to disregarding the industry standard of critical path analysis, and did not give appropriate attention to the Policy or significant factual considerations when rendering their opinions. As a result, the testimony of J.S. Held witnesses does not meet the standards of Federal Rule of Civil Procedure 702, and should be excluded.

## II. <u>ARGUMENT</u>

### A. <u>J.S. Held's Analysis is Not Relevant Based on Policy Language</u>

To be admissible, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). The Court's gatekeeping role requires "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* at 591. The proponent of expert testimony bears the burden of proving by a preponderance of the evidence that the admissibility requirements for expert testimony are met. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

1. J.S. Held's Analysis of the End of the Period of Delay is Not Consistent with the Court's Order

At the instruction of Allianz' counsel, J.S. Held focused its inquiry about the end of the Period of Delay on the issuance of TCO4. (*See* Hoy Ex. M, Dkt. 131-13, Stuck Rep. at 29 ["For purposes of this analysis, we were asked to assume that 'the actual date on which commercial operations or tenant/owner occupancy commenced or could have commenced' is the actual date when all temporary certificates of occupancy ('TCO') for the project were achieved…"]). This "analysis" led J.S. Held to conclude that TCO 4 was issued on December 10, 2016, and therefore, the Period of Delay ended on December 10, 2016. Purportedly based on a renewed understanding of the Policy, and buoyed by their interpretation of the Court's Summary Judgment Order, Allianz now contends that a different date (January 1, 2017) should control. Both dates are incorrect, and render J.S. Held's analysis irrelevant to the jury's analysis of the Period of Delay.

The Policy defines Period of Delay as "the period of time between the Scheduled Date of Completion and the actual date on which commercial operations or tenant / owner occupancy commenced or could have commenced…" (Dkt. 68-2, Policy DOI Form, § 12(B), AGR US 00006325.) In the Summary Judgment Order, the Court raised the question of "whether the 'commercial operations' or 'tenant/owner occupancy' served as the triggering event" for the end of the Period of Delay. (Dkt. 113 at 32). Multiple Allianz witnesses have admitted that the commercial operations trigger is not applicable, and that the Period of Delay does not end until the entire project is available for tenant occupancy. Lourdes Reyes, testifying as Allianz' 30(b)(6) witness, said in her deposition:

> This … form applies for commercial and for residential buildings. So commercial operations is when a new construction for a manufacturing facility or a power plant, when new stock is introduced that would be commercial operation, or for a building when it's a residential when tenants or owner has occupancy of the entire building.

(Dkt. 148-18, Reyes Dep. at 224:25 to 233:2; *see also* Dkt 148-18, Reyes Dep. at 224:25 to 233:2.) Ms. Reyes' supervisor, Kevin McCoy, confirmed that the entire project must be handed over to trigger completion. (Dkt. 148-13, McCoy Dep. at 73:23-75:20 ("Q When you say when

the project is completed, you mean the entire project? A. Yes." Q. When you say over, you mean handed over to be used as contemplated by the parties to the construction contract? …. A When the project has been completed for its intended use."]; *see also* Dkt. 148-14, S. Inglis Dep. 74:20 to 74:24 ["The scheduled completion doesn't end **until the *entire project is turned over* to the owner for its intended use**. I mean, it is what the underwriters are insuring, ***the whole project***." (Emphasis added)]). Allianz' coverage letter took the same position: "The 'Period of Delay' refers to a delay in the 'Scheduled Date of Completion' of the ***entire*** Insured Project, which, after various changes in scope and design, was a 42-story building with 283 apartment units…" (Dkt. 148-19, Allianz Denial Letter, at 2).

In sum, both the insured and Allianz understood the Policy's Period of Delay to end upon commencement of tenant occupancy **for the whole project**. If that is the standard, J.S. Held has nothing of value to add, as they followed counsel's instruction to ***assume*** that relevant occupancy occurred upon issuance of the final TCO. In essence, J.S. Held would be offered as an "expert" to confirm that TCO 4 was issued on December 10, 2016, but that fact is not contested. Allianz' designated expert on this topic, Mr. Stuck, confirmed that he does not know when units were turned over to the owner for leasing, and that he has no opinion to offer about the date when entire project was substantially completed: "No. I – I just have a basis of the TCO date of December 10, 2016." (Dkt. 131-11, Hoy Ex. K, Stuck Dep. at 93:6-14, 95:17-21.) The only testimony that Mr. Stuck or anyone at J.S. Held could possibly offer about the end of the Period of Delay is irrelevant and should therefore be excluded.

2. J.S. Held Cannot Offer Opinions To Dispute the Accuracy of the Prospective Pre-Loss Schedule

The next area of Allianz confusion relates to the Court's ruling requiring a prospective analysis of the Scheduled Date of Completion focused on the planned date for completion before the accident occurred. The Court granted Plaintiffs' motion and confirmed that "The Delayed Start Insuring Agreement's 'Period of Delay' started **on the date of the completion that was reasonably expected immediately before the accident, without consideration of the accident**." (Dkt. 113 at 12 [emphasis added]). The Court recognized that "Plaintiffs ask that the court

interpret Section 12A(ii) to require a sort of prospective analysis to determine the Sction 12A(ii) date. Dkt. 68 at 17-18. Under that analysis, a factfinder would look to plaintiffs' planned dates for completing Ten Thousand's development milestones immediately prior to the December 2, 2015 accident." (Dkt. 113 at 24 [contrasting with Defendant's request "to require a sort of retrospective analysis…"]). The Court granted Plaintiffs' request for summary judgment, and in doing so, conclusively ruled that Plaintiffs' planned dates must be the focus of any evaluation of the Scheduled Date of Completion.

Mr. Stuck admitted during deposition that he could not opine on whether the Milestone dates reflected in the schedule were inaccurate because he had not done the necessary analysis:

> "Q. … [C]an you express any opinion here today as to the preloss schedule being inaccurate in terms of its projected achievement of milestones?
>
> A. I can opine that it certainly reflects the October 27, 2016, scheduled date of completion. *I can't opine whether the errors that are in it would have affected that date*."

(Dkt. 131-11, Hoy Ex. K, Stuck Dep. at 60:7-14 [emphasis added]). Mr. Stuck also confirmed that no one else at the J.S. Held firm — which would include Allianz's other J.S. Held witnesses: Lisa Enloe, Jonathan Perry, and Jonathon C. Held — had done the analysis necessary to determine whether the Milestone dates in the Pre-Loss Schedule were inaccurate. (*Id.* at 59:20-60:6 ["Q. Has anyone at J.S. Held ever done that analysis? A. Not for the pre-loss schedule, no."]). Given the Court's Order and J.S. Held's admitted ignorance about the Pre-Loss Schedule, it cannot offer relevant testimony on the topic, and all other testimony should be excluded.

If Allianz admits that it cannot offer relevant opinions about the beginning or the end of the Period of Delay, that begs the question about what they could offer that would not be prejudicial and confusing to the jury. J.S. Held witness testimony should be excluded on relevance grounds.

### B. <u>J.S. Held's Analysis Is Not Reliable</u>

Expert testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods." Fed. R. Civ. P. 702. The expert must have "reliably applied the principles and methods to the facts of the case." *Id.* A district court must be "certain that an

expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The party proffering the expert testimony "must show that the expert's findings are based on sound science" by, for example, providing "objective, independent validation of the expert's methodology." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*"); *see* Fed. R. Evid. 702, Advisory Committee Notes ("The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field ...."). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Failure to consider obvious alternative explanations is reason to question the reliability of a proffered expert's analysis. *See Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 502 (9th Cir 1994).

1. J.S. Held's Method is not Cited in Any Case and Has Never Been Utilized in Any Court

Allianz does not disagree with Plaintiffs' statement that no court has utilized or approved of J.S. Held's method. Because Allianz cannot point to any case approving its methodology, it reverts to attacking Plaintiffs' expert Ted Bumgardner with the same flawed arguments from its separate motion to exclude his testimony. (*See* Dkt. 133.) Plaintiffs have already refuted these arguments in their opposition, which Plaintiffs incorporate by reference. (*See* Dkt. 160.)

None of the cases Allianz cites as examples of "Courts reject[ing] CPM methods of delay analysis where CPM construction schedules do not exist for the duration of the project" actually excluded experts' opinions on that basis. (*See* Def's Opposition ["Opp."], Dkt. 161, at 7.) In the cases Allianz cites, the available schedules were far more limited than the schedules available in this case. In *Fortec Constructors*, "the CPM was updated only once … and [t]his update did not consider delays in work performed **prior** to the update …." *Fortec Constructors v. United States*, 8 Cl. Ct. 490, 505 (1985) (emphasis added). In *Blinderman Construction Co.*, the plaintiff only put one page of its CPM diagram into evidence, which did not allow the court, as the finder of fact, to trace the critical path. *Blinderman Constr. Co. v. United States*, 39 Fed. Cl. 529, 584 (1997). In *Rustler Construction, Inc.*, the contractor produced only two CPM updates after

construction began and the court affirmed the D.C. Contract Appeals Board's decision that the two updates were insufficient to establish the effect of a delay on the critical path and that the contractor had breached a contractual obligation to provide updated CPM schedules. *Rustler Constr., Inc. v. District of Columbia*, 211 A.3d 187, 193 (D.C. 2019). In *George Sollitt Construction Company*, the were no CPM updates for the key "start-up and completion phases" of construction, and the CPM updates that were available did not conform with "standard industry practice" because they did not include the start and end dates for certain activities on the critical path. *George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 229, 249 (2005). Allianz resorts to these inapposite cases because it cannot point to any case law supporting the methodology its experts employed.

Contrary to the projects in question in the above mentioned cases, the schedule updates for the Project were of good quality, clearly indicating the critical path and the delays experienced. A far larger number of schedule updates were also available. In addition to the Pre-Loss Schedule, eight schedule updates were available. (*See* Dkt. 94-2, Bumgardner Rep., at 35.) As explained in Plaintiffs' opposition to Allianz' motion to exclude Mr. Bumgardner's testimony, (Dkt. 160 at 15, 20), Allianz' mischaracterizes Mr. Bumgardner's statements about the available schedule updates. Mr. Bumgardner appropriately limited his Window Analysis to the time period for which schedule updates were available. (Dkt. 160-2 at 32.) He then utilized other critical path methods using the as-built schedule which reflected the real life timing of various events as they occurred in the construction process. (*See, e.g.*, Dkt. 160 at 13-14, 19.) Allianz' citation to Mr. Bumgardner's deposition testimony fails to understand that Mr. Bumgardner was able to use the actual, as-built schedule in critical path methodologies. (*See id.*; Opp. at 8.)

2. <u>The Only Publication Recognizing J.S. Held's Method Was Written to Draw Attention to the Bizarre Approach Used by J.S. Held</u>

Allianz is incorrect in its assertion that a conference paper written by one of its own proffered experts after his analysis in this case means that the J.S. Held method is recognized in the delay analysis industry. (*See* Opp. at 9.) The document is a 2020 AACE paper authored by Mr. Perry called Comparison of Delay Analysis Methodologies in a Builder's Risk Context, CDR-

3556. (Dkt. 131-1.) In contrast to the AACE recommended practice documents, such as the AACE 29R-03, conference papers are intended to give practitioners the opportunity to present on their work at industry conferences. (*See* Supp. Hoy Ex. 1, 2020 Call for Papers; *see also* Dkt. 131-9, Perry Dep. 236:9-14.)[1] Such conference papers are not reviewed with the same rigor as guidance documents, such as AACE 29R-03, and do not provide recommendations as to best practices. This is for good reason. The basis for Mr. Perry's article, for example, is limited his experience at J.S. Held, the only place he heard of or practiced this methodology. (Dkt. 131-9, Perry Dep. 205:21-206:4.) Mr. Perry published this conference paper in 2020, well after J.S. Held analyzed Plaintiffs' delay claim in this case. Allianz' attempt to morph this post-hoc, self-serving publication into industry approval should be rejected. Allianz' assertion also ignores the deposition testimony cited in Plaintiffs' motion stating that J.S. Held's methodology was not recognized by the AACE, or any other industry organization. (*See* Pltfs' Motion to Exclude J.S. Held ["Motion"], Dkt. 130, at 15.)

3. <u>Allianz Attempts to Describe J.S. Held's Method in AACE Terms Despite J.S. Held Witnesses Admitting That They Are Not Mentioned</u>

Allianz' attempt to shoehorn J.S. Held's methodology into the AACE's "retrospective, observational" methods is incorrect. (*See* Opp. at 10-13.) The AACE's use of the word "observational" is a classification of certain critical path methods. (Dkt. 133-4, AACE 29R-03, at 11-12.) There is no one "observational" AACE method as Allianz suggests. (Opp. at 13.) As examples of "observational" methods, AACE 29R-03 identifies, for example, As-Planned versus As-Built and Windows Analysis:

| Taxonomy | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | RETROSPECTIVE | | | | | | | | | | | | | | |
| | 2 | OBSERVATIONAL | | | | | | | MODELED | | | | | | | |
| | 3 | Static Logic | | | Dynamic Logic | | | | Additive | | | | Subtractive | | | |
| | 4 | 3.1 Gross | 3.2 Periodic | | Contemporaneous Updates (3.3 As-Is or 3.4 Split) | | 3.5 Modified / Reconstructed Updates | | 3.6 Single Base[2] | | 3.7 Multi Base[1] | | 3.8 Single Simulation | | 3.9 Multi Simulation[1] | |
| | 5 | | Fixed Periods | Variable Windows | All Periods | Grouped Periods | Fixed Periods | Variable Windows | Global Insertion | Stepped Insertion | Fixed Periods | Variable Windows or Grouped | Global Extraction | Stepped Extraction | Fixed Periods | Stepped Extraction |
| Common Names | | As-Planned vs As-Built | Window Analysis | | Contemporaneous Period Analysis, Time Impact Analysis, Window | Contemporaneous Period Analysis, Time Impact Analysis, Window Analysis | Contemporaneous Period Analysis, Time Impact Analysis | Window Analysis, Time Impact Analysis | Impacted As Planned, What-If | Time Impact Analysis, Impacted As-Planned | Time Impact Analysis | Window Analysis, Impacted As-Planned | Collapsed As-Built | Time Impact Analysis, Collapsed As-Built | Time Impact Analysis, Collapsed As-Built | Time Impact Analysis, Window Analysis, Collapsed As-Built |

[1] The Supplemental Declaration of Valentine S. Hoy and its exhibits filed concurrently with this Reply are referred to as "Supp. Hoy Decl." and "Supp. Hoy Ex." respectively.

(Dkt. 133-4, AACE 29R-03, at 12.) Allianz' experts did not use any of these methods. Its experts admitted as much at deposition. (*See* Motion at 15.)

As to Allianz' assertion that Plaintiffs' expert, Ted Bumgardner, performed a delay analysis in another case purely on a review of contemporaneous project documentation, (Opp. at 13), Allianz selectively quotes Mr. Bumgardner's declaration from *United States for McCullough Plumbing, Inc. v. Halbert Construction Co., et. al.*, No. 3:17-cv-00803-CAB-WVG (S.D. Cal.). In paragraph 9 of his declaration, Mr. Bumgardner states that he based a conclusion regarding whether the defendant had misrepresented facts "simply on review of contemporaneous project documentation." (Supp. Hoy Ex. 2, ¶ 9.) Mr. Bumgardner's declaration goes on to describe his use of critical path methods such as Windows Analysis in his overall evaluation of the project delays. (*Id.* ¶¶ 14-23.)

Allianz repeats its confused view of the AACE's use of "retrospective" and "prospective." (Opp. at 13.) The AACE gives technical meanings to these terms. As used in the AACE 29R-03, a prospective method is one used to determine a "best estimate of future events" and "occurs while the project is still underway." (Dkt. 133-4 at 12-13.) A retrospective method, in the AACE 29R-03's parlance, is one "performed after the delay event has occurred." (*Id.* at 13.) The AACE 29R-03 notes "that **forward-looking** analyses (such as 'additive modeling') performed after project completion **are still retrospective** in terms of timing." (*Id.* [emphasis added].) In other words, the AACE 29R-03 uses the terms prospective and retrospective to describe "the real-time point-of-view of the analyst and not the method of analysis." (*Id.*) Thus, just because the AACE 29R-03 has critical path methods it classifies as "retrospective," does not mean J.S. Held's methodology is an AACE-approved method simply because it is described as "retrospective" in a non-technical sense.

Allianz further references a process called "Activity-Level Variance" (ALV) described in the AACE 29R-03 and erroneously claims that this process is one of the main approaches for delay analysis. Allianz then asserts that J.S. Held applied some ALV principles and leaps to the conclusion that J.S. Held therefore followed a recognized delay analysis method. The ALV process is not a delay analysis method but rather part of the source validation protocol that is

executed to verify that source information is accurate. (Dkt. 133-4, AACE 29R-03, at 18 ["The intent of the source validation protocols (SVP) is to provide guidance in the process of assuring the validity of the source input data that forms the foundation of the various forensic schedule analysis methodologies …."]). Attempting to apply a source validation approach does not qualify J.S. Held's methodology as a recognized delay analysis method.

4. J.S. Held Ignored the Critical Path and Does Not Follow Industry Standards

In defense of J.S. Held's analysis, Allianz next points to AACE 29R-03 as evidence that J.S. Held's methods meet industry standards. But Allianz again misses the point, which is that the hypothetical quoted ***assumes*** "that the late installation of drywall caused a ***critical path delay*** to the completion of the project." (Dkt. 161 at 17 [citing Dkt. 133-4 at 106, emphasis added]). From there, the hypothetical posits that a "but-for test" could be used to determine that either of two independent factors could have caused the delay. The problem, of course, is that J.S. Held's witnesses admit that they did not study the critical path of the Project to determine whether supposedly unrelated and independent events actually caused delay to the Project. (Dkt. 131-11, Hoy Ex. K, Stuck Dep. 134:9-13 [Our "analysis isn't really a critical path analysis."]; Dkt. 131-4, Hoy Ex. D, J.C. Held Percipient Dep. 101:9-102:4, 107:10-109:2.) Contrary to the argument by Allianz' counsel in its Opposition, Mr. Perry testified specifically on this question:

> Q: Is the as-built but-for schedule analysis technique that was used by Held in this case described anywhere in the AACE Recommended Practice marked as Exhibit 9 [AACE 29R-03]?
>
> A: Well, I don't have this document memorized. I do not believe that any of the method implementation protocols, MIPs, that they have in here describe that as-built but-for methodology."

Dkt - Hoy Ex. I, Perry Dep. 233:13-21. Given the disparity between industry-accepted methods and the method used by J.S. Held, and their admitted ignorance of or disregard for the critical path of the Project, there is no reason to permit testimony from J.S. Held at trial.

5. Disregarding the Critical Path Renders J.S. Held's Analysis Unreliable

Allianz argues that Mr. Stuck's report citing study of the critical path should be sufficient to defeat Plaintiffs' Motion, but they ignore that Mr. Stuck and other J.S. Held witnesses testified

to the contrary during his deposition. Allianz repeatedly cites two excerpts in Mr. Stuck's Delay Report relating to alleged critical path analysis:

> Mr. Stuck's Delay Report expressly states that "[t]he longest (critical) path in each of the project schedule updates concludes with the TCO #4 milestone, which si the last item in the project schedule" and that "J.S. Held reviewed the critical path to each TCO on the November 30, 2015 pre-loss schedule"

(*See, e.g.*, Opp. at 5, 7, and 15.) But expert reports do not testify for themselves. When Mr. Stuck was deposed, he stated that J.S. Held's "analysis isn't really a critical path analysis." (Dkt. 131-11, Hoy Ex. K, Stuck Dep. 134:9-13). He also stated that he performed no analysis of whether the loss event caused the critical path of the Project to shift:

> Q: "[D]id you do enough analysis to determine whether or not the loss event caused the critical path of this job to change?
>
> A. Well, we didn't because we didn't have to in our analysis."

(*Id.* 134:19-23.) This is consistent with Mr. Held's testimony, who invented the method used by J.S. Held, and has no training in or understanding of critical path methods. (Dkt. 131-4, Hoy Ex. D, J.C. Held Percipient Dep. 101:9-102:4, 107:10-109:2.) Despite what Stuck said in his report, at deposition, the two J.S. Held representatives designated as experts in this case both denied application of critical path analysis to this case.

Without a critical path analysis, all delays are treated equally, even if they do not drive completion of the project. The Court recognized this as one-sided. (Dkt. 113 at 32 ("[S]uch analysis does appear to necessarily stack the deck against an insured."). Mr. Perry further explained that, once all delays are treated equally, "[I]f you do not specifically assign a delay as being associated with a loss event, then it will by definition be left unassigned and not associated with the loss event." (Dkt. 131-9, Hoy Ex. I, Perry 113:7-11.) Such an approach renders the conclusions unreliable, and therefore subject to exclusion.

6. <u>J.S. Held's Assumption that TCO #4 Signals the End of the Period of Delay Renders its Opinions Unreliable</u>

Allianz' attempts to defend its decision to instruct its experts to use December 10, 2016 as the ending point of the Period of Delay fail. (*See* Motion at 17.) Allianz blatantly

mischaracterizes the Court's Summary Judgment Order. (Opp. at 16-17.) The Court's discussion of the term "commence" was made in reference to Plaintiffs' bad faith claim and was not a definitive ruling on the meaning of the term as relevant to the scope of Plaintiffs' coverage. (*See* Dkt. 113 at 32.) Dramatically different legal standards govern an insured's claim for bad faith versus breach of contract, and Allianz cannot square its position with the controlling law or the testimony of its own experts.

There is no way to interpret the term "commence" in the way Allianz asserts in a manner consistent with California's rules for interpreting insurance policies. As explained in Plaintiffs' Motion in Limine 3, 4, and 5, (Dkt. 148), and in Plaintiffs' Opposition to Allianz' Motion in Limine 7, the Court is required to interpret the Policy in a way that maximizes coverage. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003). Where there are multiple reasonable interpretations of an insurance provision, ambiguity must be resolved in favor of coverage. *Palp, Inc. v. Williamsburg Nat'l Ins. Co.*, 200 Cal. App. 4th 282, 290 (2011) ("Even if the insurer's interpretation is reasonable, the court must interpret the policy in the insured's favor if any other reasonable interpretation would permit coverage for the claim."); *see St. Mary & St. John Coptic Orthodox Church v. SBC Ins. Servs., Inc.*, 57 Cal. App. 5th 817, 825 (2020) ("If the terms are ambiguous, they must be interpreted in accordance with the insured's 'objectively reasonable expectations' …." [quoting *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990)]). Likewise, where "one construction of a contract would make it unreasonable or unfair and another construction equally consistent with the language would make it reasonable, fair, and just, the latter construction must be adopted." *Univ. of Judaism v. Transamerica Ins. Co.*, 61 Cal. App. 3d 937, 941 (1976). "When reasonably practical, contracts are to be interpreted in a manner that makes them reasonable and capable of being carried into effect, and that is consistent with the parties' intent" and so as not to render a promise "illusory." *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 765 (2001).

Allianz does not address the testimony of its own experts stating that a TCO does not mean a project is complete. (*See* Motion at 18-19 [discussing Dkt. 131-4, J.C. Held Percipient Dep. 115:20-116:6 (Q. Is it "true that a TCO could come before a project is substantially complete? A.

Absolutely.") and Dkt. 131-9, Perry Dep. 185:8-13 (explaining that completion of contract milestones, which required substantial completion, and securing a TCO were "different concepts")]).

7. J.S. Held Failed to Consider Significant Factors Relating to the Project

Allianz mischaracterizes Plaintiffs' argument when it argues that Plaintiffs have not explained "why a conclusion that a claimed delay was not caused by insured physical damage is evidence that Stuck's method is unreliably one-sided." (Opp. at 15.) Plaintiffs' argument is that an **assumption**, not an ultimate conclusion, that a claimed delay was not caused by the Loss Event is one-sided. Plaintiffs' argument is that J.S. Held, including Mr. Stuck, did not consider the **possibility** that the Loss Event impacted other aspects of the Project. (Motion at 20-21.) While Plaintiffs take issue with J.S. Held's conclusions as well, Plaintiffs' instant argument is that J.S. Held "necessarily stack[ed] the deck against" the insured by **assuming** that other parts of the Project could "continue on as planned" and were not impacted by the Loss Event. (*See* Summary Judgment Order, Dkt. 113 at 32; Motion at 21 [discussing Dkt. 131-11, Hoy Ex. K, Stuck Dep. 292:10-293:15].)

What Allianz characterizes as Plaintiffs' "challenge[s] to the factual bases for Stuck's conclusion[s]" are illustrative examples of the problems caused by Mr. Stuck's flawed methodology and assumptions. (Opp. at 18; *see* Motion at 20-22.) While Plaintiffs' take issue with Allianz' factual assertions in several aspects of this litigation, relevant here is that Stuck did not consider the possibility that the Loss Event could have effected other aspects of the Project, thus ignoring possible domino effects of the Loss Event. J.S. Held's assumptions and methodology are properly examined by the Court in its gatekeeper role. *See Claar*, 29 F.3d at 502.

## III. CONCLUSION

Plaintiffs respectfully request that the Court grant their motion to exclude opinion testimony from the J.S. Held witnesses at trial.

Dated: September 2, 2021

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By: *<u>/s/</u>* Valentine S. Hoy
VALENTINE S. HOY
Attorneys for Plaintiffs

Dated: September 2, 2021

BLANK ROME LLP

By: */s/* Linda Kornfeld
LINDA KORNFELD
Attorneys for Plaintiffs