UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SM 10000 PROPERTY, LLC, et al.,

Plaintiffs,

v.

ALLIANZ GLOBAL RISKS US INSURANCE COMPANY,

Defendant.

Case No. 19-cv-03054-PJH

**PRETRIAL ORDER**

Re: Dkt. No. 111, 128, 130, 133, 134, 143, 148, 146, 151, 153, 136, 137, 140

Pursuant to Federal Rule of Civil Procedure 16(e), the court enters the instant pretrial order. This order controls at trial unless modified by a subsequent order. For purposes of this order, the court will refer to SM 10000 Property LLC ("SM") and Swinerton Builders, Inc. ("Swinerton") collectively as "plaintiffs." The court will refer to defendant Allianz Global Risks US Insurance Co. as "defendant."

**I.   Motions in Limine**

Preliminarily, based on the parties' arguments at the pretrial conference, the court **VACATES** the finding in the April 7, 2021 order that the use of the term "but for" in Section 12A(ii) requires a prospective, forward-looking analysis to determine the Scheduled Date of Completion under that subsection. Dkt. 113 at 23-25:18. Instead, it will be up to the jury to determine both the start and end dates of the Period of Delay. The court herein denies the bulk of both parties' motions in limine, because they seek summary adjudication of facts and issues that must be decided by the jury.

/ / /

/ / /

**A.     Plaintiffs' Motions in Limine**

    **1.     Motion No. 1**

In their first motion, plaintiffs state that "[defendant's] experts should not be permitted to express opinions they did not disclose in their written reports or at deposition." Dkt. 148 at 8. In particular, plaintiffs assert that the court should not permit the J.S. Held experts to opine on the accuracy of the milestone stated in the November 30, 2015 the Pre-Loss Schedule (the "Pre-Loss Schedule"). Id. Plaintiffs further state that the court should not permit defendant's experts to opine about the date in which Swinerton turned apartment units over to SM for leasing. Id. at 9.

For the reasons stated at the pretrial conference, the court **GRANTS** this motion with respect to any undisclosed testimony by defendant's experts concerning (1) the accuracy of the milestones noted in the Pre-Loss Schedules and (2) when Swinerton turned apartment units over to SM for leasing.

    **2.     Motion No. 2**

In their second motion, plaintiffs state that "defendant should be barred from presenting evidence or argument that the starting date of the Period of Delay — the 'date on which, but for the insured loss or damage, commercial operations or tenant/owner occupancy would have commenced' — is based on anything other than the Pre-Loss Schedule." Dkt. 148 at 9.

For the reasons stated at the pretrial conference and above, the court **DENIES** this motion. The jury will determine the start and end dates of the Period of Delay.

    **3.     Motion No. 3**

In their third motion, plaintiffs state that "[defendant] should be barred from introducing evidence or argument that the date the Project received a Temporary Certificate of Occupancy ('TCO') signifies the ending date of the Period of Delay." Dkt. 148 at 10.

For the reasons stated at the pretrial conference and above, the court **DENIES** this motion.

### 4. Motion No. 4

In their fourth motion, plaintiffs state that "[defendant] should not be permitted to introduce evidence or argument that partial tenant occupancy triggers the end date of the Period of Delay." Dkt. 148 at 13.

For the reasons stated at the pretrial conference and above, the court **DENIES** this motion.

### 5. Motion No. 5

In their fifth motion, plaintiffs state that "[defendant] should not be permitted to present evidence or argument that Swinerton's delivery of the leasing office to [SM] triggers the end date of the Period of Delay." Dkt. 148 at 16.

For the reasons stated at the pretrial conference and above, the court **DENIES** this motion.

### 6. Motion No. 6

In their sixth motion, plaintiffs state that "evidence and argument regarding the parties' unexpressed intentions when negotiating Endorsement 10 should be excluded." Dkt. 148 at 19. Plaintiffs specify that they make this request regardless of whether the reformation defense is tried before the court or a jury. Id. at 19 n.1.

For the reasons stated at the pretrial conference, the court **DENIES** this motion; the court will hear any relevant evidence on this issue.

### 7. Motion No. 7

In their seventh motion, plaintiffs state that "[defendant] should be barred from presenting evidence or argument to the jury that Endorsement 10 affected the end date of the Period of Delay, including certain deposition testimony of Irene Chung." Dkt. 148 at 21. Plaintiffs again specify that they make this request regardless of whether the reformation defense is tried before the court or a jury. Id. at 21-22 n.2.

For the reasons stated at the pretrial conference, the court **DENIES** this motion.

### 8. Motion No. 8

In their eighth motion, plaintiffs state that "[defendant] should not be permitted to

1  present evidence or argument that it is entitled to an offset for liquidated damages." Dkt.
2  148 at 26. Plaintiffs state that, alternatively, "[defendant] should be required to first
3  proffer evidence to the court [showing] that [SM] will receive a windfall or double recovery
4  if coverage is not reduced by a liquidated damages offset." Id. at 27.

5  For the reasons stated at the pretrial conference, the court **DENIES** this motion.

### 9. Motion No. 9

In their ninth motion, plaintiffs state that, in its April 7, 2021 order, the court construed the term "adjusted loss" to mean "'the total amount of loss' generally 'arising from' a covered accident and measured *before* the application of any applicable deductible or limit of liability." Dkt. 148 at 27 (emphasis in the original). Plaintiffs further state that "[defendant] should not be permitted to introduce evidence or argument that is inconsistent with the court's construction of 'adjusted loss.'" Id.

At the pretrial conference, the court clarified that its construction of the term "adjusted loss" applies only to Swinerton's tendered claim under the Property Damage Coverage Form. This construction does not extend to SM's tendered claim under the Delayed Start Coverage Form. To the extent plaintiffs' motion is consistent with that clarification, the court **GRANTS** this motion. Otherwise, the court **DENIES** it.

## B. Defendant's Motions in Limine

### 1. Motion No. 1

In its first motion, defendant "seeks to prelude testimony by Plaintiffs' insurance expert, Edward McKinnon on the grounds that Mr. McKinnon's expected testimony is not relevant." Dkt. 143 at 2.

For the reasons stated at the pretrial conference, the court **GRANTS** this motion as there is no suggestion of special terms needing the interpretation of an industry standards expert.

### 2. Motion No. 2

In its second motion, defendant seeks to "preclud[e] plaintiffs from calling witnesses at trial who were first identified in their Amended Disclosures, served on July

27, 2021– well after the close of fact discovery on October 15, 2020." Dkt. 143 at 3.  The subject witnesses include a former employee of defendant, Casey Yudovin Evans, an unretained expert witness, Ralph Testa, and five employees of various subcontractors. Dkt. 167 at 9-10.

For the reasons stated at the pretrial conference, the court **DENIES** this motion. However, pursuant to its ruling on defendant's third motion below, the court precludes plaintiff from proffering Ralph Testa as an unretained expert.

### 3. Motion No. 3

In its third motion, defendant states that the court "court should preclude any 'expert' testimony or opinions from Ray Haj, Keith Dancey, Peter Ruiz, Ralph Testa, Dennis Davis, Chris Palermo, Jonathan Meir, or Roman Speron." Dkt. 143 at 4, 6.

For the reasons stated at the pretrial conference, the court **DENIES** this motion with respect to Ray Haj, Keith Dancey, Peter Ruiz, Dennis Davis, Chris Palermo, Jonathan Meir, and Roman Speron.  The court **GRANTS** this motion with respect to Ralph Testa, who is the only challenged unretained expert that defendant did not have the opportunity to depose.

### 4. Motion No. 4

In its fourth motion, defendant "seeks to preclude any other witness from testifying as to basis for any amounts claimed or allegedly owed under the supplemental policy coverages [i.e., the Property Damage Coverage Form] for Expediting Expense, Debris Removal, Escalation, Temporary Repairs, and Contractors Extra Expense." Dkt. 143 at 7.

For the reasons stated at the pretrial conference, the court **DENIES** this motion.

### 5. Motion No. 5

In its fifth motion, defendant seeks to preclude plaintiffs from presenting any evidence or argument showing that the total amount of Swinerton's "adjusted loss" under the Property Damage Coverage Form exceeds $1,005,749.  Dkt. 143 at 8-9.  According to defendant, that amount captures both Swinerton's claimed coverage for (1) direct

physical loss as well as (2) the maximum amounts permitted under the sublimits applicable to the Property Damage Coverage Form for Expediting Expenses, Debris Removal, Temporary Repairs, and Contractor's Expenses. Id. at 8.

For the reasons stated at the pretrial conference, the court **DENIES** this motion.

### 6. Motion No. 6

In its sixth motion, defendant seeks to preclude SM "from introducing evidence or eliciting testimony of any delay beyond the October 28, 2016 date predicted in the June 2016 schedule." Dkt. 143 at 13.

For the reasons stated at the pretrial conference, the court **DENIES** this motion.

### 7. Motion No. 7

In its seventh motion, defendant alternatively seeks to preclude plaintiffs from proffering "any evidence or testimony that the end of the Period of Delay is any later than January 1, 2017." Dkt. 143 at 14.

For the reasons stated at the pretrial conference and above, the court **DENIES** this motion.

### 8. Motion No. 8

In its eighth motion, defendant asks that the court preclude SM from presenting any evidence or argument concerning any covered loss they incurred during the Period of Delay's 30-day waiting period. Dkt. 143 at 15-16. In particular, defendant states that the court should preclude SM from presenting evidence of any loss incurred between October 27, 2016 and November 26, 2016. Id. at 15.

At the pretrial hearing, SM's counsel acknowledged that SM does not dispute the applicability of Delayed Start Coverage Form's 30-day waiting period, thus the court **GRANTS** the motions as to any claim for loss during the 30-day waiting period, but **DENIES** the motion as to the specified dates as the start date and end dates for the Period of Delay are jury questions.

### 9. Motion No. 9

In its ninth motion, defendant states that the court should preclude SM from

6

presenting "any evidence or testimony relating to alleged 'policy benefits owed to' [SM] that fails to consider any liquidated damages [SM] is entitled to receive." Dkt. 143 at 19.

For the reasons stated at the pretrial conference, the court **DENIES** this motion.

## II. <u>Daubert</u> Motions to Exclude Expert Testimony

For the reasons stated at the pretrial conference and based on the above, the court **DENIES** (1) plaintiffs' <u>Daubert</u> motion to exclude the retained expert testimony of Granger Stuck, Dkt. 130; (2) defendant's <u>Daubert</u> motion to exclude the retained expert testimony of Ted Bumgardner, Dkt. 133; and (3) defendant's <u>Daubert</u> motion to exclude the retained expert testimony of Brian Bergmark, Dkt. 134.

## III. Motion to Bifurcate

Plaintiffs' motion to bifurcate trial of defendant's affirmative defense of reformation from the rest of the trial is **GRANTED**. Defendant does not oppose the motion as long as such bifurcation is without prejudice to its ability to present at the main trial, evidence that may be relevant at both phases of the trial. The court will schedule the reformation bench trial to occur before the main trial after the parties meet and confer and advise whether they wish to pursue it at all, and whether it should be conducted in person or over Zoom.

## IV. Voir Dire

The jointly submitted voir dire questions are, for the most part, appropriate and will be incorporated into the court's voir dire. The parties will be afforded 15 minutes per side for follow up voir dire questions to follow the court's questioning of the entire venire. Eight jurors will be seated for this trial.

## V. Jury Instructions

The jointly submitted proposed jury instructions are fine, except they omit 9th Circuit model Instructions 1.5 and 1.7. Plaintiffs' proposed instructions based on 9th Circuit Model Instructions, CACI or BAJI, even as modified are fine, but those based on caselaw are rejected. Defendant's proposed instructions, the majority of which are based on 9th Circuit Model Instructions are fine. However, instructions numbered 1-8 and based

on case law are rejected.  The court will give jury instructions based on caselaw only if all parties agree to the instruction.

### VI. Verdict Form

Neither verdict form is perfect and the parties shall meet and confer to devise a joint verdict to be submitted on the first day of trial.

### VII. Trial Schedule and Time Limits

Because of the unavailability of a court room for the scheduled trial commencing on October 18, 2021, the trial has been continued to **May 9, 2022, at 8:30 am.**  The trial shall last no more than 10 days and will be in session Monday - Friday of both weeks.  The trial day runs from 8:30 am to 1:30 pm with two 15-minute breaks.  Each side will have 18 hours for the entirety of its presentation.

### VIII. Affirmative Defenses

In light of defense counsel's concession at the pretrial conference, the court hereby **DISMISSES** all affirmative defenses asserted in defendant's answer **except** for the five defenses listed in the parties' joint pretrial statement (Dkt. 139).  Based on that statement, those five remaining defenses include (1) reformation of Endorsement 10, as well as (2) mitigation of damages, (3) exclusions to coverage, (4) failure to comply with conditions precedent to coverage, and (5) misrepresentation or concealment of material facts in connection with the policy and the claim.

### IX. Trial Notebooks

One week before trial, the parties shall deliver eight trial notebooks for the jurors which must contain, at a minimum, any stipulations entered by the parties, a copy of the relevant insurance policies and contracts, and a list of witnesses with a photo of each witness.

**IT IS SO ORDERED.**

Dated: September 17, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge